## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

BEAR WARRIORS UNITED,
INC, a Florida Not for Profit
Corporation,

    Plaintiff,

v.

SHAWN HAMILTON, in his
Official Capacity as Secretary of
the FLORIDA DEPARTMENT
OF ENVIRONMENTAL
PROTECTION,

    Defendant.

**CASE NO.:  6:22-cv-02048**

## MOTION TO DISMISS
## AMENDED COMPLAINT

    Defendant, Shawn Hamilton, in his official capacity as Secretary

of the Florida Department of Environmental Protection ("FDEP"),

under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), moves to

dismiss the Amended Complaint.  In support of this motion, FDEP

states:

## LEGAL STANDARDS FOR MOTION

    "When considering a Rule 12(b)(6) motion, a court must determine

whether the allegations contained in the plaintiff's complaint state a

facially plausible claim for relief." *Merchant v. U.S. Dep't of Ed.*, 2021 WL 3738835, at *3 (M.D. Fla. Aug. 24, 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Plausibility" requires "more than an unadorned, the-defendant-unlawfully harmed-me accusation." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting *Twombly*, 550 U.S. at 550). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "When the allegations . . . despite being accepted true, do not raise a claim for relief, the court should dismiss the complaint." *Merchant*, 2021 WL 3738835, at *3. Where a defendant attacks "the facts that allegedly support subject-matter jurisdiction," "a court may consider extrinsic evidence" and is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case without presuming the truthfulness of the plaintiff's allegations." Id.

## SUMMARY OF PLAINTIFFS' ALLEGATIONS

The North Indian River Lagoon (North IRL) is polluted by nutrients, more specifically, nitrogen compounds. [Amended Complaint ℙ 24]. Nutrient pollution may lead to eutrophication of a surface water, as it has in the North IRL. [Amended Complaint ℙ 26]. The Plaintiff describes human sewage, from septic tanks[1] and wastewater treatment plans, as a "primary source" of nitrogen enrichment. [Amended Complaint ℙ 30]. Plaintiffs allege that the eutrophication of the North IRL has led to harmful algal blooms, which harm water quality and block sunlight from reaching seagrasses. [Amended Complaint ℙ 29]. The Plaintiffs allege that the loss of seagrass in the North IPR has caused starvation, impaired health, and death of manatees. [Amended Complaint ℙ 41].[2] Plaintiffs finally allege that by authorizing wastewater tanks and wastewater treatment plants, FDEP has engaged

---

[1] In statutes and agency rules, a septic tank and drainfield is more precisely defined as an "onsite sewage treatment disposal system," or OSTDS. *See* § 381.0065(2)(l), Fla. Stat.

[2] In 2017, the Department of the Interior reclassified the West Indian manatee from endangered to threatened. 82 FR 16668-01, amending 50 CFR § 17.11. The prohibition on a "take" continues to apply. 16 U.S.C. § 1538(a)(1).

in a "taking" of manatees, prohibited under section 9 of the Endangered Species Act (ESA), 16 U.S.C. § 1538(a)(1)(B). [Amended Complaint ⁋ 41]. Plaintiffs are seeking injunctive relief under section 11 of the ESA, the citizen-suit provision of that Act. 16 U.S.C. § 1540(g).

Following the filing of the initial Complaint, Plaintiff has filed its Amended Complaint. As to the allegations pertinent to the first two counts, Plaintiff has added new, significant allegations. Plaintiffs elaborate on the allocations of responsibilities between FDEP and the Florida Department of Health (the FDEP/FDOH Interagency Agreement), and have attached an exhibit which shows that allocation in detail. [Amended Complaint ⁋⁋ 2 Exhibit A]. Plaintiff has also added new allegations regarding Plaintiffs' alleged injuries. [Amended Complaint ⁋ 13].

## SUMMARY OF FDEP'S ROLE IN CONTROLLING NUTRIENT POLLUTION

As framed by the Amended Complaint, FDEP exercises regulatory control over nutrient pollution in surface waters, through two unrelated programs. First, FDEP regulates the discharge of pollutants through the permitting of wastewater treatment facilities. Second, during the year 2021, FDEP assumed the responsibility of implementing the

4

Florida Statutes and regulations applicable to OSTDS, a role previously held by the Florida Department of Health (FDOH). Under either program, Florida law constrains FDEP's authority in the implementation of all its regulatory programs.

FDEP does not have plenary authority under Florida law to impose regulations on every activity within its traditional areas of concern. Like all state agencies, FDEP has no common law powers, and has only such authority as the Florida Legislature chooses to confer. *S.T. v. Seminole County School Bd.*, 783 So. 2d 1231, 1233 (Fla. 5th DCA 2001), and cases cited therein. FDEP must evaluate permit applications based solely on the permitting criteria set forth in the governing pollution control statutes and FDEP's rules. *Taylor v. Cedar Key Sewerage District*, 590 So.2d 481, 484 (Fla. 1st DCA 1991); *Council of the Lower Keys v. Charley Toppino & Sons, Inc.*, 429 So.2d 67, 68 (Fla. 3d DCA 1983). In the area of environmental permitting, FDEP lacks authority to apply federal law. *Curtis v. Taylor*, 648 F.2d 946, 948 (5th Cir. 1980); *Metro. Dade County v. Coscan Florida, Inc.*, 609 So. 2d 644, 650 (Fla. 3d DCA 1992). Plaintiff does not allege that FDEP may lawfully do, under existing Florida law, what it specifically demands.

Under the regulatory regime that exists under current Florida law, it may not.

    A.   <u>Wastewater Permitting and Existing FDEP Programs for Protection of Surface Waters</u>

The Clean Water Act, through a system of cooperative federalism, has created incentives for states to adopt water quality standards, to require effluent limitations through permitting programs, and implement other programs as a means of reducing pollution.  In that system, Congress made a distinction between the control of point sources and nonpoint sources.  The Clean Water Act required a comprehensive permitting program for point sources that discharged pollutants to surface waters.  However, Congress did not authorize federal agencies to regulate water pollution from nonpoint sources, and did not mandate the creation of state regulatory programs for that purpose. *See Fisherman Against the Destruction of the Env't, Inc. v. Closter Farms, Inc.*, 300 F.3d 1294, 1297 (11th Cir. 2002); Laitos & Heidi Ruckriegle, *The Clean Water Act and the Challenge of Agricultural Pollution*, 37 Vt. L. Rev. 1033, 1034 (2013).  A separate Clean Water Act program addresses water bodies that do not achieve water quality standards by the control of point sources alone.

6

In the Total Maximum Daily Load (TMDL) program, states must identify water bodies where effluent limitations (i.e., restrictions on permitted point sources) have proven insufficient to achieve water quality standards. 33 U.S.C.A. § 1313(d)(1)(A); see Fla. Admin. Code R. 62-303.200(7).  The Clean Water Act requires states to create a list of those waters (referred to as "impaired waters," see Fla. Admin. Code R. 62-303.200(7)), and to determine a priority ranking system to address pollution problems in those waters.  Next, states must adopt TMDLs for those impaired waters.  TMDLs represent a sum of pollutants that a certain water body can assimilate without exceeding water quality standards. § 403.067(6)(a)2, Fla. Stat.; Fla. Admin. Code R. 62-303.200(31).  Finally, states must implement those adopted TMDLs by reducing loading to impaired waters until the water meets the TMDL.

The Florida Legislature created a program referred to as Basin Management Action Plans (BMAPs), for the purpose of reducing those pollutant loads.  The Florida Legislature directed that BMAPs "integrate the appropriate management strategies available to the state through existing water quality protection programs to achieve the total

maximum daily loads." Id. § 403.067(7)(a)1, Fla. Stat. (2021); see also
id. § 403.067(7)(b)1.

In 2020, through the Clean Waterways Act, the Florida
Legislature authorized the Department to create new, statewide plans
and regulations for the control of nutrients from OSTDS. Laws of Fla.
Ch. 2020-150, § 13 (adding § 403.067(7)(a)9, Florida Statutes).  Thus,
the Department must engage in additional planning to address
pollutant loading from OSTDS and publicly operated wastewater
treatment facilities. § 403.067(7)(a)9, Fla. Stat.  As to pollution from
OSTDS, local governments must develop remediation plans that will
achieve the needed quantity of nutrient reductions. *Id.* §
403.067(7)(a)9b.

B. FDEP's Role in OSTDS Permitting

As required by the 2020 Clean Waterways Act the FDEP/FDOH
Interagency Agreement, FDEP and FDOH allocated the roles of those
two agencies from the period of July through July 1, 2026. [Amended
Complaint, Ex. A]. Under that Agreement, FDEP "is responsible for the
OSTDS Program," but additional roles are allocated to FDOH, as well
as local county health departments (DOH-CHDs). [Amended Complaint,

8

Ex. A at 11]. Under that Agreement, "The DOH-CHDs shall continue permitting OSTDSs following Chapter 381, F.S., Chapter 64E-6, F.A.C., or any/all successor Florida laws, and the DOH Environmental Health Program's Chapter K guidance." *Id.* at 14. While FDEP is required to "be lead" on administrative and circuit court enforcement, DOH-CHD staff conducts inspections and investigates complaints. *Id.* at 11.

Under Florida law, FDEP is working to control nutrient sources from OSTDS through rulemaking (awaiting legislative ratification) and OSTDS remediation plans. In the 2020 Clean Waterways Act, the Florida Legislature authorized and directed the Department to adopt rules that would consider nutrient pollution as part of the BMAP process. Laws of Fla. Ch. 2020-150 § 7 (amending § 381.0065(4)(e), Fla. Stat). On April 1, 2022, the Department filed a proposed rule as directed. The proposed rule would require permits for OSTDS to incorporate the applicable requirements in the OSTDS remediation plan. According to the Department's Notice of Proposed Rule (Exhibit A to this Motion),[3] the rule requires legislative ratification before it may

---

[3] Available for download at:
https://www.flrules.org/gateway/RuleNo.asp?id=62-6.001.

take effect because it exceeds a statutory threshold for estimated regulatory costs.  Consistent with legislative directives, the Department must accomplish its goals through BMAPs and OSTDS remediation plans.  Plaintiffs do not allege any shortcomings in FDEP's process in doing so.

## FDEP's ONGOING EFFORTS TO ACHIEVE WATER QUALITY STANDARDS IN THE NORTH INDIAN RIVER LAGOON

As noted in the Amended Complaint, the Department has issued an order adopting a BMAP for the North IRL, designed to reduce nutrient pollution to a level that will achieve water quality criteria. This order is the ultimate product of regulatory initiatives initiated by FDEP and the State of Florida over several decades, to address scenarios where the control of point sources have been insufficient to achieve water quality standards for nutrients.  FDEP first developed the "impaired waters rule," a means by which the agency could systematically assess surface waters to determine which water bodies are impaired, and thus in need of restoration efforts.[4] Next, FDEP

---

[4] Chapter 62-303, Florida Administrative Code. *See Lane v. Dep't of Envtl. Prot.*, Case No. 01-1332-RP (Fla. Div. Admin. Hearings May 3, 2002), available at

replaced its previous "narrative" nutrient criterion with a complex set of numeric nutrient criteria, which now enables a more comprehensive approach to nutrient regulation.[5]  Finally, the Florida Legislature has established a comprehensive means for the state to restore impaired waters through the BMAP program.

FDEP has adopted, by rule, a set of TMDLs for the Indian River Lagoon basin, and those rules establish waste load allocations for specific point sources (e.g., specific wastewater treatment plants), sources attributed to local governments, and nonpoint sources. Fla. Admin. Code R. 62-304.520.  FDEP has also approved, by agency order, an updated BMAP [Exhibit B to this Motion] designed for the purpose of achieving the required nutrient load reductions no later than 2035. [Exhibit B at 14].  The BMAP sets presumptive limits on nutrients for individually permitted domestic wastewater systems, effective no later than July 1, 2025, that will require those facilities to show that they will not cause or contribute to an exceedance of the TMDL. [Exhibit B

---

https://www.doah.state.fl.us/ROS/2001/01001332.PDF (order on challenge to proposed rule).

[5] Fla. Admin. Code R. 62-302.530(47)(b); *see Florida Wildlife Federation, Inc. v. Department of Envtl. Prot.*, 2012 WL 2118200 (Fla. Div. Admin. Hearings June 7, 2012 (providing extensive background).

at 15, 55-56].  The BMAP requires the implementation of projects by local governments (i.e. counties and municipalities) and other entities to reduce nutrient loads in the basin. [Exhibit B at 68-69, 83- 112].

The BMAP allocates total nitrogen and total phosphorus reductions by entities (i.e., municipalities, counties, Kennedy Space Center, and FDOT District 5). [Exhibit B at 50-51].  As noted in the BMAP, local government entities will be required to submit their OSTDS remediation plans by July 1, 2025. [Exhibit B at 51].[6]  Those entities will submit projects to reduce loads from OSTDS, which will require a consideration as to how those reductions are achieved, as well as the attenuation of nutrients that would occur as the effluent travels from the watershed to the lagoon. *Id*.  Even though the OSTDS remediation plans are not complete, local governments are planning and undertaking several projects to phase out conventional OSTDS and to reduce nutrient loadings from those sources. [Exhibit B at 61, 95, 101, 110, 111].

---

[6] The same statute requires local governments with domestic wastewater facilities in their jurisdiction to develop a separate set of plans for those facilities.

12

## I.    FDEP IS IMMUNE FROM SUIT UNDER THE ELEVENTH AMENDMENT, AND PLAINTIFFS CANNOT MAINTAIN A COGNIZABLE *EX PARTE YOUNG* CLAIM.

The Eleventh Amendment to the United States Constitution bars suits against a state or a state agency. U.S. Const. Amend. XI; *Summit Med. Associates, P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999). Plaintiffs have attempted to invoke an exception to this rule under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), which would allow this Court to consider a claim against the agency head for prospective relief, to end continuing violations of federal law. *See Summit Med. Associates*, 180 F.3d at 1336. Plaintiffs appear to be attempting an *Ex parte Young* claim by alleging that the Department is continuing to authorize discharges of wastewater from septic tanks and wastewater treatment plants.

A local regulatory authority, such as a county, may potentially incur liability under the ESA by authorizing the activities of third parties that cause a take. *See Loggerhead Turtle v. Cnty. Council of Volusia Cnty*, 148 F.3d 1231, 1234 (11th Cir. 1998) (reversing defense summary judgment); *Loggerhead Turtle v. Cnty. Council of Volusia Cnty*. 92 F. Supp. 2d 1296, 1308 (M.D. Fla. 2000) (rejecting plaintiffs'

13

claim on remand). Unlike the county in *Loggerhead Turtle* (*see, e.g., U.S. ex rel. Lesinski v. S. Florida Water Mgmt. Dist.*, 739 F.3d 598, 601 (11th Cir. 2014)), FDEP is covered by the Eleventh Amendment.

As to the discharges from wastewater treatment plants, other than general conclusions, Plaintiffs point to direct discharges of untreated wastewater, such as wastewater discharges that occurred in October 2022 during Hurricane Ian. [Amended Complaint ⁋ 36]. Plaintiffs do not allege that the Department permitted such direct discharges.  Plaintiffs have not alleged, and cannot allege, a facially plausible claim for relief based upon unpermitted discharges from wastewater treatment facilities.  Plaintiffs do not allege any underlying facts, as opposed to legal conclusions, that would suggest an ongoing deficiency in the State's permitting of wastewater facilities.

By process of elimination, in order to stay within the *Ex parte Young* exception, the Amended Complaint is reduced to a claim that the Department continues to violate the ESA by issuing septic tank permits.  But consistent with FDEP's legislative authority, that process is driven by a separate and comprehensive set of regulatory tools, namely BMAPS and OSTDS remediation plans.  Unlike the county

14

government in *Loggerhead Turtle*, FDEP presently lacks the authority to do what Plaintiffs demand; and if it attempted to do so, its efforts could not survive an appeal of its agency action.

Furthermore, Plaintiffs claim requires that the Court order FDEP not only to exceed its existing regulatory authority, but to do so as a way to implement federal law.  However, the Tenth Amendment forbids the use of federal law as a means to commandeer state agencies directly for that purpose. *Printz v. United States*, 521 U.S. 898, 925 (1997).  The ESA cannot be interpreted to compel FDEP, a state agency, to implement that piece of federal legislation by regulating private parties. *Compare Burban v. City of Neptune Beach, Florida*, 920 F.3d 1274, 1281 (11th Cir. 2019).  The Plaintiff has made no cognizable claim that FDEP is engaging in any ongoing violation of the ESA. For this reason, Plaintiffs cannot maintain an *Ex parte Young* claim, and FDEP is immune from suit.

## II.    THE AMENDED COMPLAINT MUST BE DISMISSED FOR LACK OF STANDING.

To allege standing on behalf of its members (as it has attempted to do so in this instance), Plaintiff must show *inter alia* that its members would have standing to sue in their own right. *Friends of the Earth, Inc. v. Laidlaw Envtl. Services*, 528 U.S. 167, 181 (2000).  Standing requires the  plaintiff to show (1) an injury in fact that is concrete and particularized and actual or imminent; (2) that the injury is fairly traceable to the defendant's challenged conduct; and (3) that the injury is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *People for the Ethical Treatment of Animals, Inc. v. Miami Seaquarium*, 189 F. Supp. 3d 1327, 1336 (S.D. Fla. 2016).  To plead standing, a plaintiff must

> clearly allege facts demonstrating each element,  and [a court] evaluate[s] standing on a motion to dismiss based on the facts alleged in the complaint. To adequately allege injury in fact, it is not enough that a complaint sets forth facts from which we could *imagine* an injury sufficient to satisfy Article III's standing requirements, since we should not speculate concerning the existence of standing, nor should we imagine or piece together an injury sufficient to give plaintiff standing when it has demonstrated none. If the plaintiff fails to meet its burden, this court lacks the power to create jurisdiction by embellishing a deficient allegation of injury.

*Aaron Private Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1336 (11th Cir. 2019) (citations and internal quotation marks omitted; emphasis in original). Conclusory allegations will not suffice; a pleading must allege sufficient underlying claims to make a claim plausible. *Wilding v. DNC Services Corp.*, 941 F.3d 1116, 1130 (11th Cir. 2019).  Again, because Plaintiffs have not alleged any underlying factual basis to suggest deficiencies in FDEP's regulation of wastewater facilities, the question presented should be limited to the OSTDS program.

The alleged injuries of Plaintiff's members are not fairly traceable to FDEP's conduct.  A party cannot support standing based on a highly attenuated chain of possibilities. *Banks v. Dep't of Health & Human Services*, 38 F.4th 86, 97–98 (11th Cir. 2022).  There are a number of contingencies, which include the independent actions of third parties, before the alleged harm could come to pass.  Local government must authorize new development that would require the installation of new OSTDS.  The Amended Complaint requires the speculation that in addition to the 16,171 septic tanks that were installed before FDEP took over the OSTDS program [Amended Complaint Exhibit ⁋ 33] and the 20,000,000 gallons of "sewage" discharged into the North IRL since

17

2020 [Amended Complaint at ¶ 36], the ongoing installation of septic tanks will create a material difference in total nutrient loading. The Amended Complaint also requires speculation that of new septic tanks to be installed, the new tanks are located in a region where, based on the location of the tank and ground water conditions, the effluent would travel unimpeded to the North IRL. If the landowners are prohibited from installing OSTDS, the owners of land must also be prohibited from other uses (e.g., intensive agriculture) that might also cause nutrient loading to surface waters. The Amended Complaint presupposes that the increased loading from those new septic tanks would not be offset by loading reductions from the implementation of the BMAP. Finally, this new incremental loading must lead to the indirect harm to manatees, as set forth in the Amended Complaint.

Accepting the specific chronology within the Amended Complaint as true, the amended allegations only create greater distance between the alleged cause and the alleged effect. As alleged, the North IRL reached a tipping point within the last decade [Amended Complaint ¶ 24], such that as of 2019, there was no more seagrass to sustain manatees. [Amended Complaint ¶¶ 24-25]. Those conditions arose at

least two years before the Department had assumed responsibility for OSTDS regulation as described in the FDEP/FDOH Interagency Agreement.  Instead, that function was then delegated to FDOH, exercising its authority under chapter 381, Florida Statutes ("Public Health – General Provisions."),[7] and with no apparent statutory authority to regulate nutrient pollution in waterways. Accepting the alleged chronology, the Plaintiff cannot defeat an Eleventh Amendment defense.

The *Ex parte Young* doctrine applies only to ongoing and continuous violations of federal law. *Summit Med. Associates, P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999). Plaintiffs have alleged nothing other than legal conclusions regarding FDEP's regulation of wastewater facilities; and based on the new allegations, its theory regarding OSTDs regulation contradicts itself. Accepting the truth of Plaintiffs' allegations, the Department's regulation of OSTDS two years after the North IRL had already reached a tipping point, such that there were no more seagrass in those waters. To bypass *Ex parte Young*,

---

[7] To its credit, Plaintiff has not questioned the diligence of FDOH in implementing its authority at that time. There are no alleged violations of chapter 381, Florida Statutes.

the Plaintiff would somehow need to show that its activities during the past two years has violated federal law and are the cause of their injuries. Plaintiffs have not and cannot alleged sufficient underlying facts to make their claim plausible, *see Wilding v. DNC Services Corp.*, 941 F.3d 1116, 1130 (11th Cir. 2019), and in fact, their specific allegations make their claim untenable.[8]

Furthermore, the alleged injury is not redressable because a federal court cannot amend state law and confer upon FDEP the authority to deny permits under state law, where state law does not do so. *Compare Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1227 (9th Cir. 2008) (discussing potential remedy conflicting with a treaty). If FDEP were to deny an OSTDS permit based on regulatory authority it does not have, the applicant's appellate rights would render the denial a futile gesture. § 120.68(7)(e), Fla. Stat. The Plaintiffs have made no allegations concerning the ongoing permitting of wastewater treatment plans, and they cannot allege any treaceable injury resulting

---

[8] Plaintiff has added new language in paragraph 13 of the Amended Complaint, a conclusory allegation that harm to manatees is "directly traceable" to FDEP's alleged failure to regulate. But Plaintiff does not allege any underlying facts supporting the notion that its ongoing conduct has caused the alleged harm.

from FDEP's role in the permitting of OSTDS. Assuming the facts alleged in the Amended Complaint as true, Plaintiff cannot show the alleged injuries are fairly traceable to potential increases in nutrient loading, or that the Court may redress the alleged harm.

## III.   THE AMENDED COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CAUSE OF ACTION FOR A VIOLATION OF THE ESA.

Even if regulatory inaction by a state agency could in theory result in liability for "take" under Section 9 of the ESA, take liability only arises if the action or inaction is the proximate cause of harm to species. *Babbitt v. Sweet Home Chapt. Comms. for Ore.*, 515 U.S. 687 (1995). There is no claim for an ESA violation when intervening contingencies are beyond the government entity's control. *Aransas Project v. Shaw*, 775 F.3d 641, 661 (5th Cir. 2014); *Florida Panthers v. Collier Cnty.*, 213CV612FTM29DNF, 2016 WL 1394328, at *22 (M.D. Fla. Apr. 8, 2016). FDEP has a statutory directive on how it must achieve nutrient reductions: to create TMDLs and implement BMAPs. FDEP has adopted TMDLs, and there is no claim that it is deficient in the implementation of the BMAP for the North IRL. The gravamen of Plaintiff's complaint is the increased number of residences with septic

21

tanks. but growth management is beyond FDEP's purview. *Taylor v. Cedar Keys Sewerage Dist.*, 590 So. 2d 481, 484 (Fla. 1st DCA 1991); *Council of the Lower Keys v. Charley Toppino & Sons, Inc.*, 429 So. 2d 67, 68 (Fla. 3d DCA 1983).

In this respect, the Court should recognize one of many material distinctions between the alleged facts in this case and the scenario presented in *Loggerhead Turtle v. Volusia County*, 148 F.3d 1231 (11th Cir. 1998). Unlike the county government in that case, FDEP is simply achieving the goal of nutrient reduction through a separate set of regulatory tools, consistent with its legislative authority. *Compare Loggerhead Turtle*, 148 F.3d at 1247. Plaintiff's theory falls short because as a matter of law, FDEP's conduct cannot be the proximate cause of the harm alleged by the Plaintiff.

## IV.   IN THE ALTERNATIVE, THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION.

Federal courts apply *Burford* abstention (*see Burford v. Sun* Oil Co., 319 U.S. 315 (1943)) in order to protect complex state administrative processes from undue federal interference. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 362 (1989).

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*Id.* at 361 (citation omitted).

Timely and adequate review is available for FDEP's approval of TMDLs, BMAPs, and FDEP permits for OSTDS and for wastewater facilities, through administrative rule challenges (as to TMDLs), and for administrative challenges to individual permits. Florida's Administrative Procedure Act would confer standing on third parties whose substantial interests would be affected by those agency decisions, § 120.569(1), Fla. Stat., and those third parties would have a right to judicial review of the final decision after administrative challenge. § 120.68, Fla. Stat. Where third parties contend that agency enforcement of environmental regulations against a responsible party is insufficient, they have judicial remedies to pursue private civil actions against the agency or the responsible party. § 403.412, Fla. Stat.

As noted above in the history of the impaired waters rule, TMDLs,

23

the numeric nutrient criteria rule and BMAP development, the State of Florida and FDEP have enacted a complex program to address the underlying problem – nutrient pollution in surface waters. The Florida Legislature has recognized the paramount state interest in the success of those programs. § 403.067(1), Fla. Stat. FDEP respectfully submits that the Court should abstain from jurisdiction in order to allow the State to pursue its ongoing efforts in the restoration of the Indian River Lagoon.

WHEREFORE, FDEP moves for entry of an order dismissing the Amended Complaint.

Respectfully submitted this 27th day of February, 2023.

*/s/ Jeffrey Brown*
JEFFREY BROWN
Florida Bar No. 843430
Assistant General Counsel
Department of Environmental Protection
390 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000
Telephone: (850) 245-2242
Jeffrey.Brown@FloridaDEP.gov
Syndie.L.Kinsey@FloridaDEP.gov
DEP.Defense@FloridaDEP.gov

## **LOCAL RULE 3.01(g) CERTIFICATION**

I HEREBY CERTIFY that movant has conferred with opposing

party, that the parties do not agree on the resolution of the motion, and

that the conference was made by telephone communication between

undersigned counsel and counsel for the Plaintiff.  The parties reached

partial agreement on the original relief sought, with Plaintiff's motion

to amend and remove Count III of the Amended Complaint, but did not

agree as to the remainder of the pleading.

*/s/ Jeffrey Brown*
Jeffrey Brown
Assistant General Counsel

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY  that a true and correct copy of the foregoing

was served via the Court's CM/ECF system, which provides notice to all

parties, on this 27th day of February, 2023.

*/s/ Jeffrey Brown*
Jeffrey Brown
Assistant General Counsel