UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BEAR WARRIORS UNITED,
INC., A FLORIDA NOT FOR PROFIT CORPORATION,
    Plaintiff,

v.                                                      Case No. 6:22-CV-02048

SHAWN HAMILTON, in his Official Capacity
as Secretary of the FLORIDA DEPARTMENT
OF ENVIRONMENTAL PROTECTION,

    Defendant.
_____/

# DECLARATION OF KEN WEAVER
## IN SUPPORT OF DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT

I, Ken Weaver, hereby declare as follows:

1.     I am the Deputy Director for the Division of Environmental Assessment and Restoration for the State of Florida Department of Environmental Protection (DEP). As part of my responsibilities, I am responsible for overseeing the management and development of state and federally authorized programs to assess and restore Florida's water resources. These responsibilities include the development and adoption of total maximum daily loads (TMDLs). The facts set forth herein are based on my own personal knowledge, except where based on a review of the Department's records kept in the ordinary course of business. Where

1

indicated as an opinion, the stated opinion is a truthful reflection of my opinion. If called as a witness, I could and would testify to the facts stated in this Declaration.

2. A true and correct copy of my resume is attached as Exhibit A, and this document presently summarizes by professional background, education, and the subject matter of my previous testimony as an expert witness.

3. A TMDL is defined in a DEP rule, rule 62-302.200(31), Florida Administrative Code, as follows:

> "Total Maximum Daily Load" (TMDL) for an impaired waterbody or waterbody segment shall mean the sum of the individual wasteload allocations for point sources and the load allocations for nonpoint sources and natural background. Prior to determining individual wasteload allocations and load allocations, the maximum amount of a pollutant that a waterbody or waterbody segment can assimilate from all sources without exceeding water quality standards must first be calculated.

DEP adopts TMDLs by rule]. A similar definition appears in section 373.469, Florida Statutes ("Indian River Lagoon Protection Program"), enacted in 2023.

4. As a general proposition, TMDLs serve a specific purpose in the attainment of surface water quality standards. A state regulatory

agency may fully implement permit requirements in the National Pollutant Discharge Elimination System (NPDES) program for a given water body, but the water body may not meet surface water criteria after full implementation of point source controls. Such a water body that is not meeting water quality standards is commonly referred to as an impaired water. Generally, there is no parallel federal program for the control of nonpoint pollution sources, such as urban runoff or groundwater flow of effluent from septic tanks.

5. Similarly, there is no unitary federal program for states to follow as a means to control nonpoint sources or otherwise achieve a TMDL in those cases where additional reductions on point sources are insufficient to restore an impaired water. The State of Florida and DEP have adopted Basin Management Action Plans for that purpose.

6. A nutrient standard refers to a water quality standard intended to reduce the loading of certain pollutants (generally, nitrogen and phosphorus) in the water column. Excess nutrient pollutants can, under different condition, cause an imbalance of flora and fauna in a water body. A harmful algae bloom is an example of such an imbalance.

7. The regulation of nutrient concentrations in surface waters, as compared to the regulation of other water pollutants, is relatively complicated. A number of site-specific conditions tend to reduce or enhance the effect of nutrients on a water body. For several decades, DEP and its predecessor applied a narrative criterion for nutrients – i.e., a criterion that described a desired condition (i.e., no imbalance of natural populations of flora or fauna) but was not expressed as numeric value for a pollutant.

8. After a long period of rule development, a state administrative challenge, a state court appeal, and two rounds of litigation in federal court, DEP adopted a relatively complex set of numeric criteria for nutrients in the State of Florida.

9. Before the adoption of numeric nutrient criteria, the state had adopted some nutrient TMDLs for specific water bodies. As part of this process, DEP would collect and evaluate data in order to set appropriate limits for nitrogen and phosphorus loading over time.

10. In certain locations of the state, DEP has adopted a nutrient TMDL in lieu of a more general numeric standard that might otherwise apply. That is the case with the North Indian River Lagoon.

11. For the Indian River Lagoon, the Department has adopted a set of TMDLs for the Indian River Lagoon. The scientific basis for these TMDLs is described in *TMDL Report, Nutrient and Dissolved Oxygen TMDLs for the Indian River Lagoon* (March 2009) (the Technical Report). A true and correct copy of the Technical Report is attached as Exhibit B.

12. In my opinion, the Technical Report is an appropriate analysis of the issues presented and is supported by reliable data sources.

13. TMDLs for the Indian River Lagoon are based upon the analysis in the Technical Report. Those TMDLs include the ones adopted for the region known as the North Indian River Lagoon, in subsections (3), (4), (5), and (6) of rule 62-304.520, Florida Administrative Code, a true and correct copy of which is attached as Exhibit C.

14. As explained in the Technical Report, DEP accounted for the potential for error. As stated in that report:

> The objective of a TMDL is to provide a basis for allocating acceptable loads among all of the known pollutant sources in a watershed so that appropriate control measures can be implemented and water quality standards achieved. A TMDL is expressed as the sum of all point source loads (wasteload allocations, or WLAs), nonpoint source loads (load allocations, or LAs), and an appropriate margin of safety (MOS), which takes into account any uncertainty concerning the relationship between effluent limitations and water quality . . . .

[Technical Report at 49]. The margin of safety for the TMDLs in question are described in section 6.4 of the Technical Report. The margin of safety provides additional assurance that if the TMDL is erroneous, the error will be conservative or protective of the water quality.

15. As recommended in section 7.1 of the Technical Report, DEP has adopted Basin Management Action Plans to implement the TMDLs, including the North Indian River Lagoon BMAP.

16. For reference, DEP's TMDL program categorizes TMDLs for water bodies and water body segments (e.g., a defined portion of a river or a lagoon) by water body identification number, or WBID. The nutrient TMDLs for the North Indian River Lagoon addresses WBIDs numbered as 2963B, 2963C, 2963D, 2963E, and 2963F.

17. The North Indian River Lagoon remains impaired at the present time, based upon excessive nutrient concentrations. Regardless of the theoretical potential for error in the TMDLs, the adopted Basin Management Action Plan is a useful management approach for the purpose of restoring the North Indian River Lagoon. Simply phrased, as

with any waters impaired as the result of nutrient pollution, the reduction of nutrient loads is a positive management response.

18.     The United States Environmental Protection Agency (USEPA) approved the nutrient TMDLs for the North Indian River Lagoon under section 303(d) of the Clean Water Act in 2009, by a letter dated November 16, 2009 (the 2009 USEPA approval letter). USEPA also approved that TMDL as a set of revised set of water quality standards "in accordance with section 303(c) of the Clean Water Act," by a letter dated July 29, 2013 (the 2013 USEPA approval letter). As a result of that approval, the nutrient TMDLs for the North Indian River Lagoon is deemed a USEPA approved water quality standard for the State of Florida. A true and correct copy of the 2009 USEPA approval letter is attached as Exhibit D, and a true and correct copy of the 2013 EPA approval letter is attached as Exhibit E. Those approvals remain in effect at the present time.

I swear under penalty of perjury that the foregoing is true and correct.

Executed this 6 day of June 2024.

/s/ Ken Weaver

Ken Weaver (scanned signature with filing)

I swear under penalty of perjury that the foregoing is true and correct.

Executed this 6 day of June 2024.

/s/ Ken Weaver

Ken Weaver (scanned signature with filing)

8