UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BEAR WARRIORS UNITED, INC, a Florida Not for Profit Corporation,

   Plaintiff,

v.

SHAWN HAMILTON, in his Official Capacity as Secretary of the FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION,

   Defendant.

**CASE NO.: 6:22-cv-02048**

**DEFENDANT'S LEGAL MEMORANDUM
IN OPPOSITION TO PLAINTIFF'S
FOR SUMMARY JUDGMENT**

Defendant, Shawn Hamilton, in his official capacity as Secretary of the Florida Department of Environmental Protection (DEP), under rule 56, Federal Rules of Civil Procedure and rule 3.01, Local Rules for the Middle District of Florida, submits the following in opposition to the motion for summary judgment by Plaintiff Bear Warriors, Inc.:

I.     Plaintiff Has Not Shown Standing.

To reiterate and expand upon a point raised in DEP's pending motion to dismiss, Plaintiff has not alleged a legal basis to show standing; furthermore, the record shows that Plaintiff cannot prove standing. Construing the record in favor of Plaintiff, the Plaintiff has offered evidence that individuals have experienced emotional harm when observing past events associated with the claims in this case -- namely the presence of deceased manatees. However, Plaintiff cannot show a relevant, concrete and particularized injury. Plaintiff cannot show that DEP's actions are the cause of alleged injuries. Plaintiff cannot show redressability.

To show standing, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 US 367, 144 S. Ct. 1540 (2024) 23-235, 2024 WL 2964140, at *6, slip op. at 7-8 (U.S. June 13, 2024) (citations omitted). A plaintiff must not only establish standing at the time it brought the lawsuit,

2

the plaintiff also bears the burden of maintaining it thereafter. *Carney v. Adams*, 592 U.S. 53, 59 (2020). Plaintiff cannot do so in this case.

As to the first element, the injury-in-fact element requires a concrete and particularized injury. *Id*. "An injury in fact must be 'concrete,' meaning that it must be real and not abstract. The injury also must be particularized; the injury must affect 'the plaintiff in a personal and individual way' and not be a generalized grievance. An injury in fact can be a physical injury, a monetary injury, an injury to one's property, or an injury to one's constitutional rights, to take just a few common examples. Moreover, the injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon. " *Food & Drug Admin. v. All. for Hippocratic Med.*, slip op. at 8 (citation omitted). An organization cannot establish standing based solely on the intensity of its members' interests. *Id*. at 21. In declarations of individuals associated with the Plaintiff, Plaintiff has offered testimony about general concerns and grievances related to conditions in the Indian River Lagoon. But Plaintiff has attempted to plead a claim under the Endangered Species Act, not the Clean Water Act. Plaintiff offers scant evidence concerning injuries to the asserted interest in this case – the protection of manatees.

3

Where the plaintiff seeks prospective relief, as in this case, the plaintiff must establish a <u>sufficient likelihood of future injury</u>. *Id.* at 8; cf. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992) ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.") To begin, Plaintiff has not presented competent evidence of <u>any</u> likelihood of future injury. To follow the logic of Plaintiff's theory, third parties have polluted the Indian River Lagoon with nutrients; the nutrients have caused eutrophication; the eutrophication has caused the loss of seagrass; the loss of seagrass has caused the premature death of manatees by starvation; and individuals associated with the Plaintiff have experienced emotional harm after witnessing deceased manatees. One link – an implicit link – is the effort to associate DEP with the actions of the third parties who discharged to the Indian River Lagoon.

Plaintiff has not presented competent evidence regarding any of the links in the chain of causation, and cannot meet its burden of proving

standing for the purpose of its motion for summary judgment.[1] Defects in Plaintiff's effort to prove standing are particularly glaring, however, in two specific instances: Plaintiff's inability to prove a likelihood of future harm related to its Endangered Species Act claims, and its inability to prove that DEP is a cause of the alleged harms.

Plaintiff has not presented any evidence that any individual is likely in the future to suffer concrete harm related to the protection of manatees. Plaintiff presented evidence that two individuals have suffered emotional harm after viewing deceased manatees. [Pflug Declaration ¶¶ 8, 9 (2020-2021 event), Shadix Declaration ¶ 19 (2020-2021 event)].[2] But Plaintiff has not presented competent evidence that such an event is substantially likely

---

[1] Of note, Plaintiff attempts to establish some of the links through the expert report incorporated in the affidavit of Dr. Barile. The relevant portions on causation, however, represent a mere reiteration of statements by non-testifying scientists. Hearsay objections are noted below in more detail.

[2] The other declarant on the issue of harm, Laurilee Thompson, testifies about a photograph of a manatee but does not suggest any personal knowledge of such an event. The non-expert declarants make passing reference to the health of manatees, but the declarations do not suggest their competence to testify on those issues.

to occur in the future.[3] Indeed, even confining the issue to the question of manatee mortality, the record shows the opposite state of affairs. According to the deposition testimony of a research scientist for the Florida Fish and Wildlife Commission, there are no instances of manatee emaciation at the present time; instances of manatee mortality are at or below baseline conditions. [deWit Transcript at 88, line 1- 90, line 10]. Because Plaintiff cannot demonstrate a substantial likelihood of future injury, the Plaintiff cannot support its standing.

As to the second requirement for standing, Plaintiff has not proved and cannot prove that DEP is the cause of the alleged injuries.

> Government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements. So in those cases, standing is usually easy to establish.
>
> By contrast, when (as here) a plaintiff challenges the government's "unlawful regulation (or lack of regulation) of *someone else*," "standing is not precluded, but it is ordinarily substantially more difficult to establish." That is often because unregulated parties may have more difficulty establishing causation—that is, linking their asserted injuries to the government's regulation (or lack of regulation) of someone else.
>
> When the plaintiff is an unregulated party, causation "ordinarily hinge[s] on the response of the regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as

---

[3] The report for Plaintiff's manatee expert, Dr. Ray Ball, offers no opinion about the likelihood of ongoing or future manatee mortality. [Plaintiff's submission labelled "Decl. Ball Exh. 30: Expert Declaration and Report of Dr. Ray Ball, DVM"]. Dr. Ball testified in his deposition that he had not reviewed any relevant data following the "UME" which he believed ended in 2022. [Ball Deposition Transcript at 67, lines 1-19].

6

> well." Yet the Court has said that plaintiffs attempting to show causation generally cannot "rely on speculation about the unfettered choices made by independent actors not before the courts." Therefore, to thread the causation needle in those circumstances, the plaintiff must show that the " 'third parties will likely react in predictable ways' " that in turn will likely injure the plaintiffs.
>
> As this Court has explained, the "line of causation between the illegal conduct and injury"—the "links in the chain of causation,"—must not be too speculative or too attenuated. The causation requirement precludes speculative links—that is, where it is not sufficiently predictable how third parties would react to government action or cause downstream injury to plaintiffs. The causation requirement also rules out attenuated links—that is, where the government action is so far removed from its distant (even if predictable) ripple effects that the plaintiffs cannot establish Article III standing.

*Food & Drug Admin. v. All. for Hippocratic Med.*, 144 S. Ct. 1540 (2024), slip op. at 9-10 (Citations omitted; quotation marks and emphasis in original). Plaintiff's theory on standing requires an unsupportable connection between DEP and the actions of third parties.

Plaintiff's case focuses on the effects of an algae bloom in 2011 [Second Amended Complaint ¶ 22] followed by heightened manatee mortality in 2013, as well as a manatee mortality event beginning in the winter of 2020-2021. [Second Amended Complaint ¶ 24]. Plaintiff's ecologist, Dr. Peter Barile, opines that OSTDS or septic tanks are "significant drivers" of nutrients to the Indian River Lagoon system. [Barile Deposition, Ex. 1 (Barile Expert Report) at 8]. Dr. Barile additionally points

7

to the actions of Brevard County in permitting residential development with OSTDS after adoption of the 1990 Indian River Lagoon Act. *Id.* at 7. The expert report does not refer to one undisputed fact -- DEP did not assume responsibility for the OSTDS program until July 2021, after those instances of heightened manatee mortality. [Second Amended Complaint ₱ 38, Exhibit S at page 5, paragraphs A-C].

Accepting the testimony of Dr. Barile as true, adverse effects on seagrasses are the product of "perturbations" by hurricanes and tropical storms [Barile Deposition Transcript at page 95 line 10 – page 96 line 8], as well as multiple anthropogenic forces. [Barile Deposition Transcript at page 96 line 13 – page 97 line 14]. Those anthropogenic forces, according to Dr. Barile, include human-induced climate change, which he testifies causes increased nutrient loading and eutrophication of estuaries. [Barile Expert Report at 9, Barile Deposition transcript at page 81, lines 8-12].

Dr. Barile, Plaintiff's expert on the relevant topic, had not undertaken an analysis to determine whether the seagrass loss would have occurred in the absence of those other anthropogenic factors. *Id*. at page 98, line 22 to page 99, line 7. Given that logical gap, even if one were somehow to attribute pre-2021 septic tank pollution to DEP, Plaintiff cannot point to

any factor within the jurisdiction of DEP as the cause of seagrass loss. Furthermore, even if one were to consider the *post hoc ergo propter hoc* argument that septic tanks must have caused seagrass loss because septic tanks existed in the winter of 2020-2021, those discharges cannot be attributed to DEP because DEP was not responsible for the permitting or inspection of septic tanks at that time.

Third and finally, Plaintiff cannot show that the alleged harm would be redressable by the relief sought in this action against DEP. This requires a demonstration that it is likely, not merely speculative, that an injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The record shows that for regulatory programs within its control during the relevant time period, DEP has acted responsibly to abate nutrient pollution and to achieve the restoration of the Indian River Lagoon. The record shows that DEP is implementing an EPA-approved permitting program to address point sources in the North Indian River Lagoon, which it has diligently enforced. [Hess Declaration ¶ 2, 3]. This permitting system has led, and is continuing to lead, to improved treatment of wastewater discharges. *Id*. ¶ 6. While point source controls have not proven sufficient to meet the applicable water quality criteria for

9

nutrients, DEP has fulfilled its obligation under the Clean Water Act to adopt a total maximum daily load, which EPA has approved, and which remains in effect. [Weaver Declaration ¶ 18].

Tellingly, the Second Amended Complaint does not allege any defect in DEP's Basin Management Action Plan, a comprehensive project designed to achieve the restoration of the North Indian River Lagoon. *See* Second Amended Complaint ¶¶ 40, 41.[4] This record evidence shows that although DEP's actions did not cause the seagrass loss in the North Indian River Lagoon, it is taking responsible actions to restore that water body.

Plaintiff has failed to make <u>any</u> demonstration that the relief requested would undo the events in the chain of causation which allegedly led to the underlying harm. Plaintiff cannot show that the relief requested

---

[4] The Second Amended Complaint makes a passing reference to the EPA-approved total maximum daily load as "inadequate," without further elaboration. [Second Amended Complaint ¶ 41]. Plaintiff presents no argument that a dispute over the EPA-approved total maximum daily load would interfere with ongoing restoration efforts. Plaintiff now contends that DEP "announced that it cannot meet its nutrient reduction goals" [Plaintiff's Motion at 21]. However, the document cited – a graph from a Powerpoint presentation (as recounted in the affidavit of Plaintiff's counsel) – shows nothing of the sort. A more complete explanation of that document is offered in the Second Declaration of Moira Homann filed herewith, who also observes that DEP has already met its 2025 milestones.

is likely to redress the harm. Plaintiff fails again on the third element of standing.

>  To conclude these points on standing,
>
>> Consider some examples. EPA rolls back emissions standards for power plants—does a doctor have standing to sue because she may need to spend more time treating asthma patients? A local school district starts a middle school football league—does a pediatrician have standing to challenge its constitutionality because she might need to spend more time treating concussions? A federal agency increases a speed limit from 65 to 80 miles per hour—does an emergency room doctor have standing to sue because he may have to treat more car accident victims? The government repeals certain restrictions on guns—does a surgeon have standing to sue because he might have to operate on more gunshot victims?
>
>> The answer is no: The chain of causation is simply too attenuated.

*Food & Drug Admin. v. All. for Hippocratic Med.*, slip op. at 19. Construing reasonable inferences in the record in favor of the Plaintiff, the cause in the first link of causation – a set of anthropogenic factors causing the eutrophication of the Indian River Lagoon – was beyond DEP's purview. Plaintiff's theory of causation is too attenuated to support its theory on standing.

II.   <u>Plaintiff Cannot Show Causation or Demonstrate that DEP Could be Held Liable for a Violation of the Endangered Species Act.</u>

The Eleventh Circuit in *Loggerhead Turtle v. County Council of Volusia County,* 148 F.3d 1231 (11th Cir. 1998), favorably cited the decisions of other federal circuits that have held government actors liable under the

11

Endangered Species Act based on their regulatory decisions. *Loggerhead Turtle* at 1250. The Eleventh Circuit noted that it "need not decide" the question of causation for the purposes of liability under the Endangered Species Act. *Id*. When discussing those cases, the Eleventh Circuit noted that the cases supporting government liability involved "a regulatory entity that exerts control over the use of something that takes protected wildlife." *Id.* at 1251. Here, Plaintiff's effort to extend the reasoning of *Loggerhead Turtle* falls short.

In the case of the local government in *Loggerhead Turtle*, the Eleventh Circuit observed that the county "ordained beachfront lighting, allowing landowners to use lights all day and all night." *Id.* The Eleventh Circuit's discussion does not suggest that a government can be held liable for actions beyond its purview. *See id.* n. 23 (discussing the hypothetical application of proximate cause on the question of liability). Construing the record generously in favor of the Plaintiff in this case, Plaintiff cannot show that DEP has exerted control over an activity that caused an alleged take. DEP has not authorized, for example, any individuals to cause any of the harms described in the Second Amended Complaint.

12

For the reasons summarized above in the argument on standing, Plaintiff cannot even establish that DEP's regulatory actions are a cause-in-fact of first link in the chain of causation. Again, and it bears repeating, DEP did not "ordain" the installation of septic tanks in the Indian River Lagoon which preceded the periods of heightened manatee mortality. Again, even *post hoc ergo propter hoc* fails. Accepting the persuasive force of the *dicta* in the Eleventh Circuit's discussion in *Loggerhead Turtle*, DEP cannot be held liable for the actions of third parties as shown in the record of this case. It is neither the proximate cause, nor even a cause-in-fact, of the harms described in the Second Amended Complaint.

The reasoning of the district court on remand from *Loggerhead Turtle*, where the role of the government was much less attenuated than the status of DEP in the present case, is persuasive. Discussing the application of the Endangered Species Act on an amended ordinance adopted by the defendant, the Court observed:

> The Act authorizes the Secretary of the Interior to enter into management and cooperation agreement with the States, whose participation in conservation programs the Act encourages. The Act requires no affirmative conservation action by states or local governments. The Act neither compels nor precludes local regulation; it preempts that which is in conflict. Volusia County cannot be made to assume liability for the act of its private citizens merely because it has chosen to adopt regulations to

13

> ameliorate sea turtle takings. Such an anomalous result would frustrate the intent and purpose of the Act's cooperative agreement provisions. Accordingly, the Court finds that Volusia County has not violated the Endangered Species Act by enacting and enforcing its Minimum Standards for Sea Turtle Protection

*Loggerhead Turtle v. Cnty. Council of Volusia Cnty.*, 92 F. Supp. 2d 1296, 1308 (M.D. Fla. 2000) (footnotes omitted). For the same reasons, the Court should likewise conclude that DEP cannot be held liable under Plaintiff's theory of the case.[5]

### III.   Plaintiff Cannot Overcome DEP's Eleventh Amendment Immunity.

DEP is a state agency entitled to assert immunity under the Eleventh Amendment. U.S. Const. Amend. XI; *Summit Med. Associates, P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999). Plaintiff cannot show an exception to this rule the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908). The Ex Parte Young exception requires a showing of an ongoing violation of federal law.

---

[5] Plaintiff respectfully submits that the theory of government liability explained in *Loggerhead Turtle* cannot be reconciled with the plain language of the Endangered Species Act, and that approach should be abandoned or limited. Furthermore, in this case, the regulatory actions of DEP are largely a part of DEP's EPA-approved role in implementing the Clean Water Act under the doctrine of cooperative federalism. A finding of liability in this case would suggest that the Endangered Species Act overrides the allocation of responsibilities in the Clean Water Act. This conclusion would appear inconsistent with the "major question doctrine," *see W. Virginia v. Envtl. Prot. Agency*, 597 U.S. 697, 723 (2022). In any case, the Plaintiff has not met and cannot meet its burden of proving that DEP violated the Endangered Species Act under any arguable standard.

*Summit Med. Associates, P.C. v. Pryor*. As argued in DEP's motion to dismiss, Plaintiff has not plead a set of circumstances that would support the application of *Ex Parte Young*.

Plaintiff alleges that the "ecological tipping point" in the Indian River Lagoon occurred in 2011 [Second Amended Complaint ¶ 22] and culminated in a "catastrophic level" of manatee deaths in the winter of 2021-2021. *Id.* ¶ 24. Leaving aside the question of causation, Plaintiff's theory begins with past permitting decisions rather than any ongoing action by any government.  In order to allege some form of an ongoing violation of the Endangered Species Act, Plaintiff would need to change its theory of the case: it would need to allege that DEP has wrongfully failed to restore the Indian River Lagoon. Plaintiff has not alleged such a theory, and no authority suggests that liability under the Endangered Species can be extended for that purpose. Construing inferences in the record in favor of the Plaintiff, Plaintiff cannot overcome DEP's Eleventh Amendment Immunity.

IV.  Plaintiff's Motion Should be Denied Based on Material Violations of the Local Rules

Plaintiff is required to include all parts of a motion in a single document, no longer than twenty-five page inclusive of all parts. M.D. Fla. R. 3.01(a). The Second Case Amended Management and Scheduling Order, part IV, requires pinpoint citations to the record. In addition to its motion for summary judgment, Plaintiff has filed a 23-page "Statement Of Uncontroverted, Material Facts In Support Of Motion For Summary Judgment" (Statement of Facts). Plaintiff's motion for summary judgment does not cite to the record, but rather to that Statement of Facts. Plaintiff has violated the Court's Order and the Local Rules.

The violation is material. The existing page limits practically restrain the volume of argument in motions for summary judgment; the separate filing of the Statement of Facts has created, in essence, a largely inscrutable document of twice the page limits. This filing has placed an unreasonable burden on the Defendant in formulating a comprehensive response in the allotted time and page limit for response. For this additional reason, Plaintiff's motion should be denied.

V. Plaintiff's Hearsay Materials Should be Disregarded for the Purpose of This Motion.

Generally, inadmissible hearsay cannot be considered on a motion for summary judgment. *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999). DEP asserts hearsay and multiple hearsay objections to the following materials to the extent they may be offered for the truth of the matter asserted:

- Doc. 91-2, Shadix Affidavit, ¶¶ 10-12, 20, 23-24;
- Doc. 91-7, Thompson Declaration, ¶¶ 5-6, 21-22, 24-25, 37
- Doc. 91-9, Permit Application (statements within document);
- Doc. 91-10, letter from Plaintiff's former counsel;
- Doc. 91-11, letter from Plaintiff's counsel;
- Doc. 91-16, USFW publication;
- Doc. 91-17, NOAA publication;
- Doc. 91-18, U.S. Dep't of Interior document;
- Doc. 91-19, webpage excerpt;
- Doc. 91-20, Florida legislative materials;
- Doc. 91-21, water management district resolution;
- Doc. 91-24, Powerpoint presentation;

17

- o Doc. 91-26, webpage printout;

- o Doc. 91-27, "Consensus Document;"

- o Doc. 91-28, webpage printout;

- o Doc. 91-30, Barile Expert Report, Sections labelled "The toxic HAB seaweed, *Caulerpa prolifera*, has replaced seagrasses;" "IRL HABs have been producing toxins since the late 1990s;" "IRL marine mammals are impacted by human sewage-sourced pathogens," and "Sewage-driven eutrophication resulted in dietary shifts in marine mammals," together with all quotations from sources.

- o Docs. 91-31, Doc. 91-32, 91-33, 91-34, 91-35 third party publications

- o Doc. 91-36, third-party Powerpoint presentation;

- o Doc. 91-39, "Report of Dead Manatee."

In addition, as to the declarations of Katrina Shadix, Lee Roy Plug, and Laurilee Thompson, DEP objects on the grounds that those declarations include improper opinion testimony on matters requiring a show of expertise, and without a foundation suggesting personal knowledge.

18

**Conclusion**

Based upon the foregoing, DEP respectfully submits that Plaintiff's motion for summary judgment should be denied.

Respectfully submitted, June 28, 2024.

>  /s/ Jeffrey Brown
>  **JEFFREY BROWN**
>  Florida Bar No. 843430
>  Department of Environmental Protection
>  390 Commonwealth Blvd., MS 35
>  Tallahassee, Florida 32399-3000
>  Telephone:  (850) 245-2242
>  Jeffrey.Brown@FloridaDEP.gov
>  Syndie.L.Kinsey@FloridaDEP.gov
>  DEP.Defense@FloridaDEP.gov

## CERTIFICATE OF SERVICE

I HEREBY certify that a rule and correct copy of the foregoing was served via the Court's CM/ECF system, which provides notice to all parties, on this 28th day of June 2024.

Lesley Gay Blackner
Attorney for Bear Warriors United, Inc.
300 S. Duval Street
Unit 505
Tallahassee, Florida 32301-1740
lesleyblackner@gmail.com

Jessica L. Blome
Attorney for Bear Warriors United, Inc.
Greenfire Law, PC
2478 Adeline St.
Suite A
Berkeley, California 94703
jblome@greenfirelaw.com

Susan M. Bradford
Attorney for Bear Warriors United, Inc.
Greenfire Law, PC
2478 Adeline St.
Suite A
Berkeley, California 94703
sbradford@greenfirelaw.com

on this 7th day of June, 2024.

/s/ Jeffrey Brown
Jeffrey Brown
Assistant General Counsel