UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BEAR WARRIORS UNITED, INC, a
Florida Not for Profit Corporation,

   Plaintiff,

v.                            **CASE NO.: 6:22-cv-02048**

SHAWN HAMILTON, in his Official
Capacity as Secretary of the FLORIDA
DEPARTMENT OF
ENVIRONMENTAL PROTECTION,

   Defendant.

## REPLY OF DEFENDANT TO PLAINTIFF'S RESPONSE

Defendant, Shawn Hamilton, in his official capacity as Secretary of the Florida Department of Environmental Protection (DEP), submits the following reply to Plaintiff's response regarding DEP's motion for summary judgment:

**PREFACE: NOVELTY OF CLAIMS**

Plaintiff provides examples of cases arguably supporting the proposition that a government can be liable under generally similar circumstances. In all but one of those cases, the government had authorized the placement of a physical object which caused direct harm to animals. *Strahan v. Coxe*, 127 F.3d 155 (1st Cir. 1997) (gill nets and lobster pots); *Strahan v. Massachusetts Executive Office of Energy & Envtl. Affairs*, 458 F. Supp. 3d 76, 78 (D. Mass. 2020) (vertical buoy

ropes); *Ctr. for Biological Diversity v. C.L.*, 1:14-CV-258-BLW, 2016 WL 233193, at *4 (D. Idaho Jan. 8, 2016), on reconsideration, sub nom. *Ctr. for Biological Diversity v. Otter,* 1:14-CV-258-BLW, 2018 WL 539329 (D. Idaho Jan. 24, 2018) (animal traps);[1] *Animal Prot. Inst., Ctr. for Biological Diversity v. Holsten*, 541 F. Supp. 2d 1073 (D. Minn. 2008) (animal traps); *Animal Welfare Inst. v. Martin*, 588 F. Supp. 2d 70, 77 (D. Me. 2008) (animal traps). One cited case is slightly different, in that involved the placement of feral cats, as opposed to inanimate objects, where the cats committed direct harm to birds. *Am. Bird Conservancy v. Harvey*, 232 F. Supp. 3d 292 (E.D.N.Y. 2017). None of those cases:  involved the permitting of potential pollution sources; addressed the potential liability of a state agency's activities in implementing a federal pollution control program; involved harm to animals arising from harm to habitat, as opposed to direct physical harm to animals; or involved a scenario where the harm is alleged to have arisen from past events, such as the previous "collapse" of the Indian River Lagoon.

A.   **PLAINTIFF IGNORES THE REQUIREMENT OF SHOWING AN ONGOING VIOLATION UNDER EX PARTE YOUNG.**

In part A of its response to DEP's argument on Eleventh Amendment

---

[1] The Court reconsidered the first *Otter* opinion cited by Plaintiff and ruled in favor of the government party because, as with this case, Plaintiff could not show that ESA violations were likely to occur in the future.  *Ctr. for Biological Diversity v. Otter*, 1:14-CV-258-BLW, 2018 WL 539329, at *3 (D. Idaho Jan. 24, 2018).

Immunity, Plaintiff attacks a straw man. DEP does not contend it would be immune under the Eleventh Amendment in all scenarios. However, the *Ex Parte Young* doctrine is the only conceivable exception to Eleventh Amendment immunity. DEP has explained, in its motion for summary judgment and elsewhere, why *Ex Parte Young* does not apply.

DEP cited *Summit Medical Associates, P.C. v. Pryor*, 180 F.3d 1326 (11th Cir. 1999), for the proposition that the *Ex Parte Young* exception requires a showing of an ongoing violation of federal law. Plaintiff did not attempt to refute that proposition or explain how *Summit Medical Associates* fails to support the proposition. *Summit Medical Associates* remains good law. *Locke v. Canady*, 22-13971, 2024 WL 64089, at *2 (11th Cir. Jan. 5, 2024).

At most, Plaintiff can say that in the cases cited above in the Preface, some plaintiffs have succeeded in maintaining a cause of action against a government for violations of the ESA. If a government's approval of a trapping license can be deemed an ESA violation when the trap kills members of a protected species, it is not unreasonable to say that the continued issuance of the same permits is an ongoing violation. Here, Plaintiff's theory of liability is predicated on the previous "collapse" of habitat. [Second Amended Complaint ¶ 9 ("Over the past decade or so the North IRL has ecologically collapsed and has become a dead zone."), ¶¶ 21-24, 28]. DEP is proceeding diligently to restore the IRL. However

3

DEP's conduct could be characterized, its conduct is not an ongoing violation for purposes of Eleventh Amendment immunity.

## B. THE DEPARTMENT'S IMPLEMENTATION OF THE CLEAN WATER ACT PROVIDES CONTEXT TO THE ELEMENT OF PROXIMATE CAUSE.

In part B of its response to DEP's motion, Plaintiff presents another straw man argument. DEP has not argued that "compliance with" the Clean Water Act [Response at 14] entitles DEP to a statutory exemption. DEP's motion shows undisputed evidence of its diligent efforts to control pollution and restore the Indian River Lagoon. Contrary to allegations in the Second Amended Complaint, Plaintiff has not presented evidence that DEP has acted irresponsibly in its implementation of the Clean Water Act or other relevant programs.

DEP's implementation of the Clean Water Act is relevant, particularly when the Court compares the alleged conduct of DEP with the conduct of government defendants in other ESA cases. DEP refers to the preface of this response and submits the following: the responsible implementation of a pollution control program is not the same as the issuance of a license for third parties to use animal traps or fish nets, and it is not the same as placing feral cats in bird habitat. As discussed in the next section, this supports a dispositive argument in DEPs favor – the question of causation for liability purposes. With no dispute of fact, DEP has not authorized activities that would directly harm members of an endangered species. Instead, with no dispute of fact, DEP has and

4

is implementing its authority to restore past harms to an environmental resource. The distinction is critical, as shown in the next section.

## C. ON THE SUBJECT OF CAUSATION AS A REQUIREMENT FOR LIABILITY UNDER THE ESA, THE EXISTENCE OF A "REGULATORY REGIME" IS NOT ENOUGH.

One might argue that any federal, state, or local pollution control organization constitutes a regulatory regime that given enough funding and legislative authority, could solve every problem related to the habitat of endangered species. However, no authority suggests that a government body, merely by existing and having some jurisdiction in a location where members of an endangered species have suffered harm, is strictly liable for that harm. *See Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 700 (1995) ("Congress had in mind foreseeable rather than merely accidental effects on listed species."); *Aransas Project v. Shaw*, 775 F.3d 641, 657 (5th Cir. 2014) (discussing concurring opinion in *Sweet Home*).

In those cases recognizing the potential for government liability under the ESA for third party conduct, the question of proximate cause creates one of several principled limits. If this theory of government liability is to be entertained, it should not be extended beyond those extreme cases where a government continuously authorizes the placement of physical objects which

cause direct and ongoing harm to animals. Proximate cause "normally eliminates the bizarre." *Aransas Project* at 657 (quoting concurring opinion in *Sweet Home*).

Plaintiff has centered its claim on past harm to habitat as the alleged result of septic tank discharges; the discharges and the harm took place when DEP was not responsible for permitting those septic tanks. The liability of governments under the ESA cannot be without limits, or federal courts will assume the responsibility of overseeing all regulatory decisions in areas where members of endangered species suffer harm. Plaintiff's theory falls short because the existence of a "regulatory regime" is not enough to support the potential for liability.

The district court decision on remand in *Loggerhead Turtle* illustrates the logic of a limiting principle. The Eleventh Circuit *Loggerhead Turtle v. County Council of Volusia County.*, 148 F.3d 1231, 1251 (11th Cir. 1998), entertained the possibility of liability for a government that had "ordained" beach lighting, a direct physical harm to turtles. On remand and considering the question of proximate cause, the district court held that the local government could not be liable for regulations that the local government enacted in order to ameliorate harm. *Loggerhead Turtle v. Cnty. Council of Volusia Cnty.*, Florida, 92 F. Supp. 2d 1296, 1308 (M.D. Fla. 2000). Accord, *Florida Panthers v. Collier Cnty.*, 2016 WL 1394328, at *22 (M.D. Fla. Apr. 8, 2016). The scenario presented in the *Loggerhead*

6

*Turtle* decision on remand presented a stronger case for liability than the present case, which involves an attenuated chain of causation predicated on alleged harms to habitat.

The present case is most similar to *Aransas Project v. Shaw*, 775 F.3d 641, 659 (5th Cir. 2014). Both cases involves "contingencies" outside the state's control and contingencies often outside of the state and human control. *See Aransas Project* at 661-62. In both cases, the gravamen of plaintiff's theory was that the agency had maintained a permitting system for activities within its police powers that may cause harm to habitat. *See id.* at 662 ("Texas law generally forbids appropriating water from the state's rivers without a permit. While permits authorize usage, however, they do not compel it." (Citation omitted)). Both cases involve remote actions in complex ecosystems. *See id.* at 657. As the court in *Aransas Project* noted, the "butterfly effect" theory of causation cannot support liability. *Id.* Plaintiff does not and cannot explain how the remote connection between DEP septic tank permitting, increased residential development, the non-permitted activities of private actors, and climate factors supports an action against DEP under the ESA. *Cf. Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 392 (2024) (on causation and standing). DEP respectfully submits that the Court should apply the reasoning in *Aransas Project*.

7

Respectfully submitted,

*/s/ Jeffrey Brown*
**JEFFREY BROWN**
Florida Bar No. 843430
**KELLEY F. CORBARI**
Florida Bar No. 103692
Department of Environmental Protection
390 Commonwealth Blvd., MS 35
Tallahassee, Florida 32399-3000
Telephone:  (850) 245-2242
Jeffrey.Brown@FloridaDEP.gov
Kelley.Corbari@FloridaDEP.gov
Syndie.L.Kinsey@FloridaDEP.gov
DEP.Defense@FloridaDEP.gov

## CERTIFICATE OF SERVICE

I HEREBY certify that a rule and correct copy of the foregoing was served

via the Court's CM/ECF system, which provides notice to all parties below:

Lesley Gay Blackner
Attorney for Bear Warriors United, Inc.
300 S. Duval Street
Unit 505
Tallahassee, Florida 32301-1740
lesleyblackner@gmail.com

Jessica L. Blome
Attorney for Bear Warriors United, Inc.
Greenfire Law, PC
2478 Adeline St.
Suite A
Berkeley, California 94703
jblome@greenfirelaw.com

Susan M. Bradford
Attorney for Bear Warriors United, Inc.
Greenfire Law, PC
2478 Adeline St.
Suite A
Berkeley, California 94703
sbradford@greenfirelaw.com

on this 12th day of July, 2024.

                                               */s/ Jeffrey Brown*
                                               Jeffrey Brown
                                               Assistant General Counsel