**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| BEAR WARRIORS UNITED, INC, a Florida Not for Profit Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>ALEXIS A. LAMBERT, in her Official Capacity as Secretary of the FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION,<br><br>    Defendant. | **BENCH MEMORANDUM REGARDING FORESEEABILITY OF MANATEE TAKE**<br><br>**CASE NO.:  6:22-cv-02048** |

The remaining factual dispute to be resolved by the court following an evidentiary hearing is set forth in the court's December 18, 2024, order on the parties' motions for summary judgment: "…whether there is an ongoing risk of manatee takings under FDEP's regulatory regime." Dkt. 134, p. 16.

**I.    Relevant law and regulations:**

The Endangered Species Act (ESA) makes it unlawful "for any person subject to the jurisdiction of the United States" to "take" a federally listed species. 16 U.S.C. § 1538. "Take" is defined in the ESA to mean "to harass, harm, pursue, hunt, shoot, wound, kill trap, capture, or collect, or to attempt to engage in any such conduct." *Id.* at § 1532(19).

> ESA regulations define the terms "harm" and "harass":
>
> *Harm* in the definition of "take" in the Act means an act which actually kills or injures wildlife. Such act may include significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering.

50 C.F.R. § 17.3

> *Harass* in the definition of "take" in the Act means an intentional or negligent act or omission which creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering.

*Id.*

The Supreme Court upheld this regulatory definition of "harm" in *Babbit v. Sweet Home Chapter of Communities for a Great Oregon,* 515 U.S. 687 (1995). Of note, the Supreme Court reaffirmed the ESA's "broad purpose to extend protection against activities that cause the precise harms Congress enacted the statute to avoid" by discussing its landmark opinion, *TVA v. Hill,* 437 U.S. 153 (1978):

> In *TVA v. Hill* we described the Act as "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." (citation omitted) Whereas predecessor statutes enacted in 1966 and 1969 had not contained any sweeping prohibition against the taking of endangered species on federal lands, (citation omitted) the 1973 Act applied to all land in the United States and to the Nation's territorial seas. As stated in § 2 of the Act, among its central purposes is "to provide a means whereby the ecosystems upon which endangered species may be conserved…" 16 U.S.C. § 1531(b).

*Babbit v. Sweet Home*, 515 U.S. at 698.

## II. The ESA's "take" prohibition applies to individual members of a listed species.

*Babbitt v. Sweet Home* also makes clear that ESA protections apply to individual members of a listed species, not only populations of species. The Court cited to the 1973 Senate and Reports on the ESA legislation, noting that "[t]ake is defined…in the broadest possible manner to include every conceivable way in which a person can 'take' **any** fish or wildlife." *Id.* at 704 (quoting S. Rep No. 93-307, p. 7 (1973)). (Emphasis added.) This applicability of the ESA take prohibition to each and every member of a species is underscored in *Loggerhead Turtle v. County Council,* 896 F. Supp. 1170, 1180 (M.D. Fla. 1995):

> Volusia County misreads the Endangered Species Act. It is irrelevant for the purposes of the Act whether the "taking" at issue involves a critical habitat or not. Moreover, the Act does not distinguish between a taking of the whole species or only one member of the Species. *Any taking and every taking*—even of a single individual of the protected species—is prohibited by the Act. *See* 16 U.S.C. § 1538. Hence the future threat of a even single taking is sufficient to invoke the authority of the Act.

*See Swan View Coalition, Inc. v. Turner*, 824 F. Supp. 923, 938 (D.Mont.1992) (threatened extinction is not necessary for a finding of harm under the Endangered Species Act).

3

### III. An activity that is reasonably likely to result in actual harm or harassment of a listed species constitutes take under the ESA.

Decided mere months before the Supreme Court released *Babbitt v. Sweet Home*, *Loggerhead Turtle v. County Council of Volusia County*, 896 F. Supp. 1170, 1180 (M.D. Fla. 1995) held that the "future threat of harm to two members of a protected species is sufficient to invoke the provisions of the [ESA]." The *Loggerhead Turtle* court found that "a reasonable likelihood that the defendant will commit future violations of the [ESA]" is sufficient to enjoin the activity threatening to incidentally take the listed species. *Id.*

This principle is settled law for evaluating the likelihood of take under the ESA. Most recently, in *Center for Biological Diversity v. Little*, 724 F. Supp. 3d 1113 (D. Idaho 2024), summary judgment was entered against the State of Idaho over its wolf trapping regulations in grizzly bear habitat. Grizzly bears and other bear species have been ensnared in the traps in other jurisdictions, but such trapping has not been documented in Idaho. No matter. "[A] reasonably certain threat of imminent harm to a protected species is sufficient to support issuance of an injunction under Section 9 of the ESA." *Center for Biological Diversity v. Little*, 724 F. Supp. 3d at 1130 (quoting *Defs. of Wildlife v. Bernal,* 204 F.3d 920, 925 (9th Cir. 2000)). The court also quoted *Marbled Murrelet v. Babbitt,* 83 F.3d 1060, 1068 (9th Cir. 1996) and *Loggerhead Turtle v. County Council of Volusia,* 896 F.Supp. 1170,

4

1180 (M.D. Fla. 1995) for the settled principle that an activity that is reasonably likely to result in documented harm to a listed species shall be enjoined. Indeed, the court held:

> The Court needs not wait until an Idaho recreational wolf trapper complying with all of Idaho's laws and rules actually reports a trapped, snared, or dead grizzly bear, as this would raise the standard to one of absolute certainty and thereby frustrate the purposes of the ESA.

*Center for Biological Diversity v. Little*, 724 F. Supp. 3d at 1135.

### IV. "Take" is foreseeable when it is reasonably certain that habitat modification will cause harm or harassment to a listed species.

The *Babbitt v. Sweet Home* Court recognizes that the take prohibition covers "the foreseeability of incidental takings," which result from some activity that incidentally harms or harasses a listed species. *Babbitt v. Sweet Home,* 515 U.S. at 707. In her *Babbitt v. Sweet Home* concurrence, Justice O'Connor observed that "the [harm] regulation's application is limited by ordinary principles of proximate causation, which introduces notions of foreseeability." *Id.* at 709 (noting that the activities that amount to unlawful take include "harm," "harass," "pursue," "kill," etc). Justice O'Connor's concurrence asserted that "[b]reeding, feeding, and sheltering are what animals do. If significant habitat modification, by interfering with these essential behaviors, actually kills or injures an animal protected by the Act, it causes "harm" within the meaning of the regulation." *Id.* at 710. The concurrence provides examples of habitat modification that interferes with

5

breeding, feeding and sheltering sufficient to meet the ESA's harm standard, including "environmental pollutants that cause an animal to suffer physical complications during gestation." *Id.* at 710, and draining a pond occupied by an endangered fish, *Id.* at 713.

The law is now settled that habitat modification that is reasonably certain to cause harm or harassment to a listed species establishes a take claim under the ESA. Decisions include *Forest Conservation Council v. Rosboro*, 50 F.3d 781 (9th Cir. 1995), holding that proposed clearcutting forty acres of forest occupied by an endangered bird constitutes imminent threat of harm despite lack of showing of past or current injury by interfering with birds essential behavioral patterns of breeding feeding and sheltering; *Cascadia Wildlands v. Scott Timber Co.,* 105 F.4th 1144, 1158 (9th Cir. 2024) (holding that proposed clearcutting of forty nine acres of forest occupied by an endangered marbled murrelets would interfere with murrelets' breeding because they have high site fidelity, establishing a "chain of events that would result in injury to the murrelets [that] is direct, not attenuated[]").

## V.     Remedies:  Injunctive and Other Relief

The ESA expressly authorizes citizen suits to enjoin acts determined to constitute an unlawful take and further establishes the availability of injunctive relief. 16 U.S.C. § 1540(g)(1)(A). The broad scope of equitable

6

power a trial court holds to craft injunctive relief in the environmental realm is famously ratified in *Weinberger v. Romero-Barcelo et al.,* 456 U.S. 305, 313 (1982):

> [T]he comprehensiveness of this equitable jurisdiction is not to be denied in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. 'The great principles of equity, securing complete justice, should not be yielded to light inferences of doubtful construction.

The Supreme Court's affirmation of broad equitable power was applied in the ESA context in *Strahan v. Coxe,* 127 F.3d 155 (1st Cir. 1997): "The ESA does not limit the injunctive power available in a citizen suit, and thus, we understand the Act to grant a district court the full scope of its traditional equitable injunctive powers. 'Equitable injunction includes the power to provide complete relief in light of the statutory purpose.'" 127 F.3d at 170 (1st Cir. 1997) (quoting *Ephraim Freightways, Inc. v Red Ball Motor Freight, Inc.,* 376 F.2d 40, 41 (10th Cir. 1967)).

The ESA provides that in the event an applicant is engaged in an activity that poses a threat of take of a listed species, the applicant may seek an incidental take permit from the Department of Interior, pursuant to 16 U.S.C. § 1539. But application for an incidental take permit is not the only remedy available to a court for violation of the ESA.

7

Date: March 17, 2025,                Respectfully submitted,

                                                */s/Lesley Blackner*
                                                Lesley Blackner • FBN 065043
                                                Lead Counsel
                                                300 S. Duval Street #505
                                                Tallahassee, FL 32301
                                                Telephone: (561)-818-6621
                                                lesleyblackner@gmail.com

                                                Jessica L. Blome (admitted pro hac vice)
                                                GREENFIRE LAW P.C.
                                                2748 Adeline St., Suite. A
                                                Berkeley, California 94703
                                                Telephone: (510) 900-9502 ext. 703
                                                jblome@greenfirelaw.com

## Certificate of Filing

I HEREBY CERTIFY that true and correct copies of this notice have been served to all counsel of record via the CM/ECF system on this 16th day of March 2025.

                                                */s/ Jessica L. Blome*
                                                Jessica L. Blome