UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| BEAR WARRIORS UNITED, INC, a Florida Not for Profit Corporation,<br><br>  Plaintiff,<br><br>v.<br><br>ALEXIS A. LAMBERT, in her Official Capacity as Secretary of the FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION,<br><br>  Defendant. | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF PROPOSED INJUNCTION**<br><br>CASE NO.:  6:22-cv-02048 |

Plaintiff Bear Warriors United, Inc. submits this Memorandum in Support of Plaintiff's Proposed Injunction, in accordance with the Court's April 11, 2025, Order, which directed Plaintiff, "to file a proposed injunction detailing the relief it seeks." Dkt. 172, p. 21. The Order also requires that, at a minimum, "Defendant apply for an incidental take permit." Dkt. 172, p. 20.

Plaintiff submits its request in the form of a Proposed Injunction, which is filed herewith, in keeping with the Supreme Court's affirmation of the judiciary's broad equitable power in *Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982). This broad equitable power was applied to the Endangered Species Act in *Strahan v. Coxe,* 127 F.3d 155 (1st Cir. 1997). Indeed, "The ESA does not limit the injunctive power available in a citizen suit, and thus, we

understand the Act to grant a district court the full scope of its traditional equitable injunctive powers. 'Equitable injunction includes the power to provide complete relief in light of the statutory purpose.'" 127 F.3d at 170 (1st Cir. 1997) (quoting, *Ephraim Freightways, Inc. v Red Ball Motor Freight, Inc.*, 376 F.2d 40, 41 (10th Cir. 1967)).

**I.    The Court must require that Defendant Florida Department of Environmental Protection apply for an Incidental Take Permit before the expiration of 60 days.**

The Endangered Species Act provides that the Secretary of the Department of Interior may issue an ITP, "if such taking is incidental to, and not the purpose of, the carrying out of an otherwise lawful activity." 16 U.S.C. § 1539(1)(B). The ITP process is complex and takes time. It requires, among other things, a "conservation plan" (16 U.S.C. § 1539(2)(A)), minimization and mitigation of takings (16 U.S.C. § 1539(B)(ii)), assurances of adequate funding (16 U.S.C. § 1539(B)(iii)); a determination that "the taking will not appreciably reduce the likelihood of the survival and recovery of the species in the wild[;]" (16 U.S.C. § 1539(2)(B)(iv)); as well as "other assurances," "appropriate terms and conditions as the Secretary deems necessary or appropriate[,]" and "reporting requirements" to ensure compliance (16 U.S.C. § 1539(2)(B)(v)).

The fact that obtaining an ITP takes time is illustrated by *Loggerhead Turtle*, in which Defendant Volusia County applied for an ITP on July 17, 1995, to permit the take of sea turtles from beach driving. *Loggerhead Turtle v.*

2

*County Council,* 896 F. Supp. 1170, 1176 (M.D. Fla. 1995). Volusia County obtained its ITP on November 21, 1996, one year and four months later. *Loggerhead Turtle v. County Council,* 92 F. Supp.2d 1296, 1300 (M.D. Fla. 2000). Accordingly, Plaintiff asks that Defendant FDEP apply for an ITP as soon as possible, but at least before the expiration of 60 days. Moreover, and as more fully explained below, until Defendant FDEP obtains an ITP for take of manatees in the North Indian River Lagoon (IRL), this Court has jurisdiction to minimize take by ordering basic food, medical care, and monitoring for manatees. The Court also has the authority to order the reduction of the ongoing influx of nitrogen into the North IRL by halting the addition of yet more new residential and commercial construction in the North IRL that use On-Site Sewage Treatment and Disposal Systems (OSTDS), which will load yet more nitrogen to the North IRL, the cause of the lagoon's destruction.

## II.   Interim Remedial Relief

In its Second Amended Complaint, Plaintiff pled the following relief, in relevant part:

> 4. Issue an Order requiring [the Florida] DEP to cease its authorization of the discharge of nitrogen from septic tanks and wastewater plants into the North [Indian River Lagoon];
>
> 5. Issue an Order requiring [Florida] DEP to provide medical monitoring and veterinarian care together with proper nutritional forage to all manatees in the North [Indian River Lagoon] until such

3

time as sufficient seagrass that will permanently sustain manatees returns to the North [Indian River Lagoon;

Dkt. 59, p. 49. Plaintiff requests that the Court order Defendant FDEP to undertake these measures as interim relief pending the provision of an ITP, as follows.

### A. The Court's Order supports the implementation of a biomedical monitoring program, supplemental feeding program, and data collection pending issuance of an ITP.

The Court's April 11 Order found, "[u]nder FDEP's regulatory regime, it will take *at least a decade* for the North IRL to even "start seeing recovery." Dkt. 172, p. 12. Until the seagrass is recovered, manatees face myriad health and reproductive problems associated with a lack of seagrass, because, as the Court succinctly determined: "Healthy manatees require seagrasses." Dkt. 172, p. 13. The implementation of a supplemental feeding program is necessary to reduce manatee malnutrition and starvation. Suggested parameters for a supplemental feeding program are set forth in the attached declaration of Dr. Ray Ball, D.V.M., Plaintiff's manatee veterinarian. *See* Ball Decl., ¶ 2, Exh. A.

Also, manatee conditions will be improved by a manatee biomedical monitoring program, together with collection of data on manatees, water quality, seagrass, and harmful algae bloom (HAB) in the North IRL, as well as the Central IRL, Banana River, and Mosquito Lagoon. The importance of this data collection throughout the IRL system is addressed in the attached

declaration submitted by Dr. Peter Barile, Ph.D., Plaintiff's environmental scientist. *See* Declaration of Dr. Peter Barile, ¶ 2, Exh. A. Of note, Dr. Ball and Dr. Barile are aligned in their opinion that Florida's manatee experts are already experienced in manatee biomedical monitoring, as evidenced by the 2012 report, "Biomedical health assessments of the Florida manatee in Crystal River." Ball Decl., Exh. B.

Dr. Barile explains that it is necessary to include the entire IRL system, comprised of the North IRL, Central IRL, Banana River, and Mosquito Lagoon in this data collection effort in order to have an accurate and comprehensive understanding of how manatees are faring in the North IRL. This is because manatees are not stationary beings within the North IRL but travel throughout these various waters that comprise the IRL system. Barile Decl., Exh. A. As Dr. Barile notes, manatees congregate at the winter refugia of the Florida Power & Light plant in the North IRL and Berkley Canal in the Banana River, and then, when it warms up, fan out throughout the North IRL, Central IRL, Banana River, and Mosquito Lagoon, looking for forage. *Id.* Florida Fish & Wildlife Conservation Commission manatee veterinarian Dr. Martine de Wit confirmed this observation at trial. Indeed, according to the scientists, forage may be available in one area, but not another, and that travel exacts energy demands on manatees living and traversing the North IRL. Similarly, macroalgae and HABs may be present in one area, but not another,

5

and seagrass may be available in one area, but not another. A holistic assessment of the North IRL system is required to improve manatee feeding and health for manatees that traverse the North IRL during the next twelve-fourteen months, as FDEP goes through the ITP process. These data points will impact supplemental feeding decisions, as to when and where forage should be provided. Ball Decl., Exh. A; Barile Decl., Exh. B.

### B. The Court's Order supports a moratorium on new construction using OSTDS within the North IRL.

The Court's April 11 Order found that:

> What all this means is that FDEP would have to reduce nutrients entering the IRL to a low enough level and for a long enough time for nutrients to cycle out of the system to allow seagrasses to return at significant levels. Conversely, if FDEP does not reduce nutrient levels, there will be harmful algal blooms and, in turn, no seagrass recovery and more manatee takings.

Dkt. 172, p. 17. A moratorium on new residential and commercial construction using OSTDS within the North IRL watershed pending the issuance of an ITP will serve the important function of *stopping the addition of new sources of nitrogen that load into the North IRL* while the ITP application is processed. Given the reality that the FDEP's own witness testified that seagrass "remediation efforts would take between 12 and 17 years as estimated by the St. Johns River Water Management District[,]" Dkt. 172, p. 16, and the Court's finding that it is "imperative to reverse the damage to the North IRL[,]" Dkt. 172, p. 18, it is reasonable to enjoin new residential and commercial

6

construction that use OSTDS within the North IRL watershed, pending issuance of an ITP.

The issuance of such an interim, remedial injunctive relief is well within the Constitutional power of this Court. In *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency,* 122 S.Ct. 1465, 152 L.Ed. 2d 517 (2002), a case that has distinct parallels to the instant case, the Supreme Court rejected a takings claim over temporary development moratorium that sought to save famed Lake Tahoe's water quality from the relentless degradation of nitrogen pollution. The Supreme Court observed:

> …moratoria like Ordinance 81-5 and Resolution 83-21 are used widely among land-use planners to preserve the status quo while formulating a more permanent strategy. In fact, the consensus in the planning community appears to be that moratoria, or "interim development controls" as they are often called, are an essential tool of successful development.

*Id*. at 1487. (footnotes omitted). New residential and commercial construction that use OSTDS will only exacerbate nitrogen loading into the North IRL. The Court has already held that continuing high levels of nitrogen loading into the North IRL has caused the collapse of seagrasses, resulting in ongoing take of manatees that occupy the North IRL. New sources of nitrogen flowing from OSTDS should be enjoined pending issuance of the ITP.

### C. Plaintiff's requested interim relief is reasonable and supported by experts.

Considering the Court's Order requiring Defendant Florida Department of Environmental Protection (FDEP) to apply for an incidental take permit (ITP), Plaintiff seeks an injunction requiring certain interim remedial relief pending Defendant's receipt of an ITP. Plaintiff submits the Declarations of Dr. Ray Ball, D.V.M. and Dr. Peter Barile, Ph.D. in support of Plaintiff's request for this targeted interim relief, which is designed to reduce or eliminate the ongoing take of Atlantic Coast Manatees in the North Indian River Lagoon, as FDEP's application for an ITP is in process. *See* Ball Decl., ¶ 3; Barile Decl., ¶ 3. Plaintiff's experts testify that the following interim remedial measures are necessary:

- A moratorium on new residential and commercial construction that uses "onsite sewage treatment and disposal systems" (OSTDS), commonly referred to as septic tanks, within the watershed delineated at Figure 1 in the North IRL 2021 Basin Management Action Plan. This moratorium should commence within sixty days of the entry of Plaintiff's Proposed Injunction and remain in effect until an ITP is received by Defendant.

- Implementation of a biomedical health assessment program for manatees within the North IRL, the Central IRL, the Mosquito Lagoon and the Banana River Lagoon. The program should be established and overseen by

8

manatee experts, including at least one expert not employed by the Florida Fish & Wildlife Conservation Commission (FWC), to be agreed to by Plaintiff. FDEP must submit of quarterly reports related to the status of the biomedical health assessment program must be submitted by Defendant to the Court, which shall be public. This program shall remain in effect until Defendant receives an ITP.

- Implementation of a supplemental feeding program for Atlantic Coast Florida manatees in the North IRL, the Central IRL, the Mosquito Lagoon, and the Banana River Lagoon. The program must be established and overseen by a team of manatee experts, including at least one expert that is not employed by FWC. Plaintiff must have the right to place at least one qualified individual on this team. FDEP must submit quarterly reports on the program to the Court that shall be public. This program shall terminate when Defendant receives an ITP.

- Quarterly submission of manatee morality statistics, recovered live manatees, water quality and harmful algae bloom reports by the Defendant to the Court by Defendant until Defendant receives an ITP. These reports shall be public.

### III. Conclusion

For the foregoing reasons, Plaintiff requests this Court to enter Plaintiff's Proposed Injunction, which is filed herewith.

9

Dated: April 25, 2025,	Respectfully submitted,

*/s/ Lesley Blackner*
Lesley Blackner • FBN 065043
Lead Counsel
300 S. Duval Street #505
Tallahassee, FL 32301
Telephone: (561)-818-6621
lesleyblackner@gmail.com

Jessica L. Blome (admitted pro hac vice)
GREENFIRE LAW P.C.
2748 Adeline St., Suite. A
Berkeley, California 94703
Telephone: (510) 900-9502 ext. 703
jblome@greenfirelaw.com

## Certificate of Filing

I HEREBY CERTIFY that true and correct copies of this notice have been served to all counsel of record via the CM/ECF system on this 25th day of April 2025.

*/s/ Jessica L. Blome*
Jessica L. Blome