# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

BEAR WARRIORS UNITED, INC, a Florida Not for Profit Corporation,

  Plaintiff,

v.

ALEXIS LAMBERT, in her Official Capacity as Secretary of the FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION,

  Defendant.

**CASE NO.: 6:22-cv-02048**

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S PROPOSED INJUNCTION

Defendant, Alexis Lambert, as Secretary of the State of Florida Department of Protection, submits the following regarding Plaintiff's requested injunction.

## INTRODUCTION

This Court found a state agency violated the Endangered Species Act (ESA) based on the actions of third-party polluters. As DEP argued, that determination tests the boundaries of Article III standing principles and the anticommandeering doctrine. *See, e.g.*, Doc.64 at 17-21. Plaintiff's proposed injunction raises additional questions about the requirements of the ESA, the scope of this Court's equitable power, and the division of authority between various Florida state agencies. In short, Plaintiff asks for too much from the wrong defendant. This Court should reject the proposed injunction and limit its remedy to a declaratory judgment.

## ARGUMENT

**I. Applying for an Incidental Take Permit is optional and would not redress Plaintiff's injuries.**

Plaintiff first asks this Court to compel DEP to apply for an Incidental Take Permit under the ESA. Doc.174 at 1. But those permits are not mandatory, and even if DEP applied for one, it would not remedy Plaintiff's injury.

**A.** The ESA allows a party to commit an otherwise unlawful taking if the party receives a permit from the U.S. Fis & Wildlife Service confirming that the taking is "incidental to … an otherwise lawful activity." 16 U.S.C. §1539(a)(1)(B).

The law, however, does not *require* parties to apply for a permit. "[P]ursuing an ITP is not mandatory and a party can choose whether to proceed with the permitting process." *Defs. of Wildlife v. Bernal*, 204 F.3d 920, 927 (9th Cir. 2000). The voluntary nature of these permits is for good reason. As Plaintiff acknowledges, "[t]he ITP process is complex and takes time." Doc.174-1 at 2. Thus, if a party believes that its conduct "would not result in the take of an endangered" species, it may prefer to forego the process of applying for a permit. *Bernal*, 204 F.3d at 927.

This Court should not compel a state agency to take an action that is optional under federal law. "Due to concerns of comity and federalism," injunctive relief ought "not require more of state officials than is necessary to assure their compliance with federal law." *Clark v. Coye*, 60 F.3d 600, 603-04 (9th Cir. 1995); *see also, e.g.*, *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1257 (11th Cir. 2020). Here, the ESA doesn't require anyone to apply for an Incidental Take Permit.

Caselaw confirms this conclusion. The only federal circuit that has directly addressed the question has agreed that courts may not compel defendants to apply for an Incidental Take Permit. *See Bernal*, 204 F.3d at 927 (district court properly denied plaintiff's demand that school district apply for a permit because "a party may proceed without a permit"); *cf. Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 15 n.6 (D.C. Cir. 2005) (quoting *Bernal* approvingly); *Rocky Mountain Wild v. Dallas*, 98 F.4th 1263, 1302 (10th Cir. 2024) ("There is no affirmative requirement

2

that [parties] seek a … permit."). Instead, the ESA authorizes civil and criminal penalties for those who choose not to apply for a permit and *then* take an endangered species *without* an Incidental Take Permit. *See* 16 U.S.C. §1540(a)-(b).

To be sure, the ESA contemplates injunctive relief in some circumstances. *See* 16 U.S.C. §1540(g)(1)(A). But federal courts have largely refrained from requiring state agencies to apply for Incidental Take Permits. Instead, they have simply ordered those agencies to cease "authorizing" activity that harms an endangered species. *Ctr for Biological Diversity v. Little*, 724 F. Supp. 3d 1113, 1141-42 (D. Idaho 2024); *see also, e.g.*, *Loggerhead Turtle v. Volusia County*, 896 F. Supp. 1170, 1183 (M.D. Fla. 1995); *Flathead-Lol-Bitterroot Citizen Task Force v. Montana*, 703 F. Supp. 3d 1229, 1244-45 (D. Mont. 2023).

For its part, Plaintiff does not cite any decision supporting its claim that the Court "must require" DEP to "apply for an Incidental take Permit." *See* Doc.174-1 at 2. Instead, it relies on a three-decades-old decision for the generic proposition that the Court's equitable powers are "broad." *Id.* at 1 (citing *Strahan v. Coxe*, 127 F.3d 155 (1st Cir. 1997)). But when Congress specifies a remedial scheme—as it does in the ESA, providing for civil and criminal penalties—"equitable relief" going beyond that contemplated by the statute "is not ordinarily appropriate." *Rochow v. Life Ins. Co. of N.A.*, 780 F.3d 364, 371 (6th Cir. 2015); *see also Christ v. Beneficial Corp.*, 547 F.3d 1292, 1298 (11th Cir. 2008).

**B.** Even if requiring DEP to apply for a permit were within this Court's equitable powers, such an order would not redress Plaintiff's claimed injury, for at least three reasons. First, Incidental Take Permits are discretionary, and there is no guarantee the U.S. Fish & Wildlife Service would entertain DEP's application. *See* 16 U.S.C. §1539(a)(1) (USFWS "may" grant a permit). Second, the Marine Mammal Protection Act separately prohibits the taking of manatees without the discretionary approval of the Secretary of the Interior (in consultation with the Marine Mammal Commission) and a subsequent rulemaking. 16 U.S.C. §1371(a). Third, even if the Secretary granted an Incidental Take Permit *and* the rulemaking were successfully completed, DEP would still be free to continue the very incidental taking that Plaintiff alleges is the source of its injury. *See* Doc.59 at 31 (complaining that "DEP has 'incidentally taken' manatees in the North IRL within the meaning of the ESA"). In other words, applying for a permit will not redress the alleged injury.

**C.** Compelling DEP to seek an Incidental Take Permit also raises the same Tenth Amendment concerns DEP has already warned about. *See* Doc.64 at 15. Plaintiff essentially proposes using the Incidental Take Permit application process to compel DEP to administer its licensing regime to enforce federal Endangered Species Act standards against third parties. That is a quintessential anticommandeering doctrine violation. "[T]he Federal Government may not

4

compel the States to implement … federal regulatory programs." *Printz v. United States*, 521 U.S. 898, 925 (1997). If the federal government wants to enforce the ESA against developers and homeowners in the North Indian River Lagoon, it is free to do so. It is not free to "conscript" DEP to do it on its behalf. *New York v. United States*, 505 U.S. 144, 178 (1992).

## II. Plaintiff's proposed moratorium on private construction would improperly bind parties not before this Court.

Plaintiff asks this Court to impose an injunction not just on DEP, but on private parties who are not before this Court. It demands a "moratorium" on "new residential and commercial construction that use[s] onsite sewage treatment and disposal systems." Doc.174 at 3. But this remedy exceeds the Court's equitable jurisdiction, for multiple reasons.

**A.** "As a general matter, a court may not enjoin a non-party that has not appeared before it to have its rights legally adjudicated." *United States v. Robinson*, 83 F.4th 868, 879 (11th Cir. 2023). Yet that is precisely what Plaintiff seeks here: an injunction that, on its face, prohibits *anyone* from undertaking residential or commercial construction using onsite sewage treatment and disposal systems. Needless to say, the independent landowners and builders whose property rights would be curtailed by such an order are not parties to this action.

In addition, though Plaintiff describes the moratorium as "temporary," it has no stated end date. It purports to remain in place unless and until DEP receives

5

an Incidental Take Permit—by no means a sure thing. *See* Doc.174 at 3-4. In other words, the moratorium has "no limitation in time" and leaves affected parties "'to guess about its intended duration.'" *Union Home Mortgage Corp. v. Cromer*, 31 F.4th 356, 363-64 (6th Cir. 2022) (quoting *Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 444 (1974)). "Rule 65(d) does not permit" such open-ended injunctions. *Id.* at 364.

 **B.** To the extent Plaintiffs seek an indirect moratorium—an injunction requiring *DEP* to prohibit construction in the affected areas—that remedy is likewise unavailable. DEP has no power under Florida law to prohibit residential or commercial development; that authority is left to local zoning boards. *See generally* Ch. 553, Fla. Stat. (vesting authority for supervising construction in local governments). In fact, Florida law specifically *authorizes* construction using "nutrient-reducing onsite sewage treatment and disposal systems" or similar nitrogen-reducing "wastewater treatment systems." § 373.469(3)(d), Fla. Stat. Certainly, a federal court can enjoin a state official to *cease* conduct that violates federal law. *See, e.g.*, *Jacobson*, 974 F.3d at 1257. But it cannot require a state official to affirmatively take actions they have no power to take under state law. *Id.* at 1253-54 (no standing to sue state official who has no role in implementing challenged election system).

6

Even if DEP *did* have the authority to impose an across-the-board prohibition on development, an order compelling the use of that authority would (again) run afoul of the anticommandeering doctrine.[1] If private entities are violating the ESA with environmentally damaging construction in the North Indian River Lagoon, the federal government can impose civil fines and criminal penalties, and "any person" can file a suit for injunctive relief against those entities directly. *See* 16 U.S.C. §1540. Plaintiff didn't take that direct route. And taking the indirect route (i.e., requiring DEP to adjust its own regulatory scheme to prohibit non-ESA-compliant behavior) would effectively "commandeer [the] State's … administrative machinery for federal purposes." *Burban v. Neptune Beach*, 920 F.3d 1274, 1281 (11th Cir. 2019).

**C.** Plaintiff's request for a third-party injunction also highlights the traceability and redressability problems at the core of its claim. *See, e.g.*, Doc.64 at 17-21. If Plaintiff's injury is caused by the "'independent action of some third party not before the court,'" like the residential and commercial builders it now wants

---

[1] Enjoining the use of private property by third parties raises concerns under the Fifth Amendment as well. Like the other branches, federal courts are bound by the Takings Clause. *Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot.*, 560 U.S. 702, 713 (2010). If this Court prevents landowners from developing their property, especially when those landowners have not themselves been found liable for an ESA violation, it will have arguably committed a taking without just compensation. *See Knick v. Scott*, 588 U.S. 180, 189-90 (2019). This is an additional reason not to order a moratorium.

7

to enjoin, then that injury is not fairly traceable to DEP. *Murthy v. Missouri*, 603 U.S. 43, 57 (2024). And because the builders are "'not parties'" to this litigation, this Court lacks authority to enjoin their conduct. *Jacobson*, 974 F.3d at 1254. So whatever harm, if any, their activity inflicts on Plaintiff is not redressable.

### III. Plaintiffs cannot compel DEP to take action outside its authority under Florida law.

Finally, Plaintiff demands a suite of additional "interim" remedies "pending the provision of an ITP." Doc.174-1 at 4. Plaintiff wants DEP to establish, oversee, and prepare quarterly progress updates on programs to feed and provide veterinary care for manatees in the North Indian River Lagoon. Doc.174 at 1-3. It also wants DEP to prepare quarterly reports on manatee population statistics and environmental conditions in the Lagoon. *Id.* But these programs are unnecessary and, more importantly, DEP is not the right agency to implement them.

**A.** To start, Plaintiff's interim programs lack a sufficient basis in the record. Plaintiff presented no evidence that manatees in the Indian River Lagoon presently suffer from emaciation or related medical conditions. To the contrary, the unrefuted testimony of Dr. Martine deWit showed that such emaciation is not taking place. Doc.93 at 24-25. Furthermore, the U.S. Fish & Wildlife Service found that seagrass in the Indian River Lagoon is recovering and the manatee population is *growing*. *Id.* Even if additional feeding or medical care might offer *some* benefit to manatees in the affected areas in the short term, Plaintiff's remedial programs

8

have no set end date. Like the proposed construction moratorium, Plaintiff's proposed injunction would require DEP to continue the programs until it secures an Incidental Take Permit. Doc.174 at 1-3.

**B.** More importantly, Plaintiff's interim remedies are directed at the wrong agency. Basic Article III standing requirements mean that injunctive relief must be addressed to state officials who have the power to remedy a Plaintiff's injury. *See Jacobson*, 974 F.3d at 1253. If the defendant can't effectuate the plaintiff's proposed remedy, then the plaintiff's injury is neither traceable to nor redressable by the defendant. *Id.* at 1253-56.

But DEP is not responsible for and has no authority to monitor or provide care for marine mammal populations. Its legislative delegated authority is limited to managing "air and water" pollution. § 403.061, Fla. Stat. Instead, the Florida Constitution vests the authority to supervise "wild animal life and freshwater aquatic life" in the Florida Fish & Wildlife Conservation Commission. Fla. Const. Art. 4 §9. Statutes further specify that the stability of manatee populations is the Commission's responsibility. *See, e.g.*, § 20.331(7), Fla. Stat. (the Commission shall "[m]onitor the status and health of marine life" and "[d]evelop restoration and management techniques"); § 379.2433, Fla. Stat. ("The [Commission] shall implement and administer an enhanced manatee protection study ….").

9

The Commission, in other words, is the agency with the authority and expertise to carry out Plaintiff's remedial programs. Plaintiff acknowledges this. For one of its requested remedies, it asks that an expert be appointed that is "not employed by the Florida Fish and Wildlife Conservation Commission." Doc.174, at 2. That admission is fatal. The Commission is an "independent" body "not subject to [DEP's] control." *Jacobson*, 974 F.3d at 1253. But Plaintiff chose to sue DEP, not the Commission. And "[a]ny persuasive effect a judicial order might have upon [other agencies], as absent nonparties who are not under [DEP's] control, cannot suffice to establish redressability." *Id.* at 1254. The Court itself previously recognized this principle, explaining that what is "required is that the official be responsible for the challenged action." Doc.112 at 15.

At bottom, the requested injunction would provide no relief for Plaintiff because (1) DEP has no authority to implement the programs and (2) the agency that *could* implement the programs—the Commission—would not be bound by any injunction issued here. It is not party to this litigation. *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1205 (11th Cir. 2021).

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's proposed injunction and limit relief to the existing declaratory judgment.

Respectfully submitted this <u>6th</u> day of May 2025.

        STATE OF FLORIDA DEPARTMENT
        OF ENVIRONMENTAL PROTECTION


        <u>*/s/ Jeffrey Brown*</u>
        **JEFFREY BROWN**
        Florida Bar No. 843430
        **KELLEY F. CORBARI**
        Florida Bar No.: 103692
        Department of Environmental Protection
        3900 Commonwealth Blvd., MS 35
        Tallahassee, Florida 32399-3000
        Telephone:  (850) 245-2242
        Email:  Jeffrey.brown@floridadep.gov
                Kelley.Corbari@FloridaDEP.gov
                DEP.Defense@FloridaDEP.gov

        *Counsel for Shawn Hamilton, in his official capacity as Secretary of the Florida Department of Environmental Protection*

## CERTIFICATE OF SERVICE

I HEREBY certify that a rule and correct copy of the foregoing was served via the Court's CM/ECF system, which provides notice to all parties, on this <u>6th</u> day of May 2025.

*/s/ Jeffrey Brown*
**JEFFREY BROWN**