UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**BEAR WARRIORS UNITED, INC.,**

        **Plaintiff,**

v.                                                   Case No. 6:22-cv-2048-CEM-LHP

**ALEXIS A. LAMBERT,**

        **Defendant.**
_____/

**ORDER**

THIS CAUSE is before the Court on Defendant's Motion to Stay ("Motion," Doc. 191). For the reasons set forth below, the Motion will be denied.

**I.   BACKGROUND**

Having already established that Defendant was the proximate cause of manatee takings in the North Indian River Lagoon ("North IRL"), (Summary Judgment Order, Doc. 134, at 16–17), Plaintiff demonstrated at trial that there exists an ongoing risk of such takings, (Bench Trial Order, Doc. 172, at 12). After making that finding, the Court then directed Plaintiff to submit a proposed injunction. (*Id.* at 21) Once Plaintiff did, (Doc. 174), Defendant was given an opportunity to respond, (Doc. 179). After Defendant filed a response, (Doc. 180), the Court entered an injunction, (Doc. 190). Defendant appealed the Bench Trial Order, (Doc. 181), and

now moves to stay the injunction pending appeal, (Doc. 191). Since filing this Motion, Defendant has also appealed the injunction. (Doc. 195).

## II.  LEGAL STANDARD

"While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d). "Thus the rule grants the district court with the sound discretion in determining whether to grant or deny the stay." *Wyndham Hotels & Resorts v. Merco Grp. at GB Hotel, LC*, No. 06-22920-CIV-KING, 2008 U.S. Dist. LEXIS 139685, at *2 (S.D. Fla. May 15, 2008). In evaluating whether a stay is warranted, courts consider the following four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Ga. Muslim Voter Project v. Kemp*, 918 F.3d 1262, 1267 (11th Cir. 2019) (J. Pryor, J., concurring). The movant bears the "heavy burden" of showing their entitlement to such "extraordinary relief." *Winston-Salem/Forsyth Cnty. Bd. of Educ. v. Scott*, 404 U.S. 1221, 1231 (1971).

### III. ANALYSIS

"The first two factors of the [ ] standard are the most critical. It is not enough that the chance of success on the merits be better than negligible." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (internal quotation omitted). In arguing a strong showing of likelihood of success on the merits, Defendant doubles down on the standing, anticommandeering, and causation arguments made by motion and at trial. This Court rejected those arguments as unfounded in both law and fact each time they were raised. This order explains—again—why that is so.

#### A. Standing

Plaintiff is an environmental organization and asserted "standing solely as the representative of its members." *Warth v. Seldin*, 422 U.S. 490, 511 (1975). "[A]n organization must demonstrate that (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (internal quotation marks omitted). Defendants only contest the first prong of the organizational standing inquiry.

Retreading well-worn ground, Defendant attacks each of the three prongs that Plaintiff's members must show to establish standing. "[A] plaintiff must show

(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Additionally, "'because injunctions regulate future conduct, a party has standing to seek injunctive relief' only if his injury in fact is 'a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury.'" *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1253 (11th Cir. 2023) (quoting *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001)).

As for injury in fact, Plaintiff established that its individual members suffered injury from the pollution of the North IRL and resulting manatee deaths. Defendant makes much of a footnote in the Court's Order noting that one of Plaintiff's witnesses observed a dead manatee calf. That is far from all the Court rested its finding upon. As Defendant observed but then breezed past, one of Plaintiff's members suffered an economic injury, (*see* Doc. 172 at 7–8), which the Eleventh Circuit has called the "epitome" of a concrete injury in fact, *MSPA Claims 1, LLC v. Tenet Florida, Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019).

Regarding the issue of a threat of future injury, Defendant relies upon the testimony of Dr. Martine de Wit and characterizes it as that of "Plaintiff's expert." This line of argument falls flat for two reasons. First, Dr. de Wit was a fact witness—not an expert. Second, the Court did not find Dr. de Wit's testimony credible, (Doc.

172 at 14, 17), because it flew in the face of highly credible expert testimony, (*see id.* at 13–14, 15–16).

The end of the Unusual Mortality Event ("UME") also does not have the significance Defendant imputes to it. Defendant continuously refers to the likelihood of Plaintiff's members encountering dead manatees. That is but one form of injury they suffered. Moreover, the closure of the UME does not equate to proof that no manatees are dying from the pollution in the North IRL. Indeed, as laid out in the bench trial order, there was an abundance of evidence to the contrary.

Then, seeking to challenge causation by rehashing an argument it made on summary judgment, Defendant argues that FDEP did not regulate permits for septic tanks before 2021 while seizing upon the term "legacy pollutant." The pollution undeniably began before FDEP assumed control of the onsite sewage treatment disposal systems ("OSTDS") program. But Defendant is the current administrator of the OSTDS program, (Doc. 97-1 at 5), and has maintained control over the legacy pollutants in the North IRL, Fla. Stat. § 403.061 ("[FDEP] shall have the power and the duty to control and prohibit pollution of air and water"). Thus, it is likely that Defendant's ongoing violations of federal law caused, and will likely cause in the future, Plaintiff's injuries.

Related to this, Defendant makes a one-sentence reference to the *Ex parte Young* doctrine, an argument made before and rejected, that implicates the Eleventh

Amendment immunity enjoyed by states. (Doc. 112 at 14; Doc. 134 at 7). Rather than making a substantive argument, Defendant explains the doctrine only permits suits against state officials for prospective equitable relief to cease current violations of federal law. Indeed, that is what the Court found at trial. FDEP is presently violating federal law.

Defendant proceeds to correctly assert the ESA requires no affirmative conservation programs by the state. Taking a quote from *Loggerhead Turtle* entirely out of context, Defendant proceeds to argue that the relief the Court has ordered is unlawful. (*See* Doc. 191 at 7). That is not so. The Court has ordered Defendant take steps to remediate the harm FDEP has caused, is causing, and will continue to cause under its present regulatory regime. This is not affirmative conservation in the sense *Loggerhead Turtle* references. *See Loggerhead Turtle v. Cnty. Council of Volusia Cnty., Fla.*, 92 F. Supp. 2d 1296, 1308 (M.D. Fla. 2000). Therein, the Court explained, "The [ESA] requires no affirmative conservation action by states or local governments. The Act neither compels nor precludes local regulation; it preempts that which is in conflict." *Id.* Such preemption is what has occurred here, and Defendant has been tasked with remediating the harm FDEP caused.

Next, Defendant argues an incidental take permit is unlikely to redress the harm of seeing dead manatees in the future because there is such a high level of legacy pollutants. Indeed, it is within the Secretary's discretion whether to issue an

incidental take permit, but that is only because an applicant must clear several hurdles before "the Secretary *shall* issue the permit." *See* 16 U.S.C. § 1539(a)(2)(B) (emphasis added).

True enough, an incidental take permit would continue to allow FDEP to take manatees "incidental to, and not the purpose of, the carrying out of an otherwise lawful activity." *Id.* § 1539(a)(1)(B). But then Defendant's argument falls apart. "No [such] permit may be issued . . . unless the applicant therefor submits to the Secretary a conservation plan." *Id.* § 1539(a)(2)(A). The conservation plan must specify:

> (i) the impact which will likely result from such taking;
>
> (ii) what steps the applicant will take to minimize and mitigate such impacts, and the funding that will be available to implement such steps;
>
> (iii) what alternative actions to such taking the applicant considered and the reasons why such alternatives are not being utilized; and
>
> (iv) such other measures that the Secretary may require as being necessary or appropriate for purposes of the plan.

*Id.* "The agency *must* issue an incidental take permit if, after opportunity for public comment, it finds that the taking will be incidental, appropriately mitigated and funded, and that 'the taking will not appreciably reduce the likelihood of the survival and recovery of the species in the wild.'" *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, CV 23-101-M-DWM, 2024 U.S. Dist. LEXIS 154812, at *27–

28 (D. Mont. Aug. 28, 2024) (emphasis added) (quoting *id.* § 1539(a)(2)(B)). Thus, an incidental take permit clearly redresses the harm suffered by Plaintiff.

Defendant then argues Plaintiff lacks standing to seek several prongs of the injunction because Florida's Fish and Wildlife Conservation Commission ("FWCC") directs the relevant programs required to implement the injunction. But FDEP not FFWCC caused Plaintiff's harm through its regulatory regime. *Cf. BBX Cap. v. FDIC*, 956 F.3d 1304, 1313 (11th Cir. 2020) (finding no traceability to a defendant that had no authority to control the defendant independent agency that allegedly caused the plaintiff's harm). Not only that but FDEP is also empowered to "[s]ecure necessary scientific, technical, research, administrative, and operational services by interagency agreement, by contract, or otherwise. All state agencies and counties, upon direction of the department, shall make these services and facilities available." Fla. Stat. § 403.061(4). Thus, if FFWCC's authority is necessary for FDEP to fulfill its obligations, FDEP may simply direct FFWCC to comply.

### B.     Anticommandeering Doctrine

FDEP wisely did not challenge again the ESA itself on anticommandeering grounds. Nor could it. The ESA applies to all private entities and to "any officer, employee, agent, department, or instrumentality of the Federal Government, of any State, municipality, or political subdivision of a State, or of any foreign government." 16 U.S.C. § 1532(13). Including state entities in the statute indicates

Congress's intent to preempt *any* action—state or private—that flouts the ESA. *See Strahan v. Coxe*, 127 F.3d 155, 168 (1st Cir. 1997). Instead, Defendant challenges the injunction's scope on anticommandeering grounds as to the requirement that FDEP cease issuing new permits for OSTDS within the North IRL watershed and the Court's direction that FDEP apply for an incidental take permit.

At the outset, the latter objection fails. *See Flathead-Lolo-Bitterroot*, 2024 U.S. Dist. LEXIS 154812, at *28 (D. Mont. Aug. 28, 2024) ("[A] district court may order a state defendant to apply for an Incidental Take Permit." (citing *Ctr. for Biological Diversity v. Little*, 724 F. Supp. 3d 1113, 1134 (D. Idaho 2024) and *Animal Prot. Inst., Ctr. for Biological Diversity v. Holsten*, 541 F. Supp. 2d 1073, 1081 (D. Minn. 2008)). The Court turns to Defendant's challenge as to permitting.

"Citing the anticommandeering doctrine, the Supreme Court has invalidated federal laws that commandeer a State's legislative or administrative machinery for federal purposes." *Burban v. City of Neptune Beach, Fla.*, 920 F.3d 1274, 1281 (11th Cir. 2019). "At the same time, the Court has clarified that anticommandeering principles do not bar federal laws that '*regulate state activities*, rather than seeking to control or influence the manner in which States regulate private parties.'" *Id.* (cleaned up) (emphasis added) (quoting *Reno v. Condon*, 528 U.S. 141, 150 (2000)).

Defendant relies on *Burban* to argue the permitting restriction imposed by the Court violates the Tenth Amendment. In that case, the Eleventh Circuit held

requiring the state to issue a particular form of identification under a federal statute would violate the Tenth Amendment. *Burban*, 920 F.3d at 1281 ("[The plaintiff's] proposal that we require states to issue identification plainly seeks to control how States regulate private parties, as opposed to regulating state activities.").

This case is distinguishable. First, in *Burban*, the state was not in violation of federal law that acts to preempt state regulation. Instead, the plaintiff there advanced a reading of a federal statute that imposed new requirements on the state. *Id.* at 1281–82. But, as explained above, FDEP—like everyone else—must comply with the ESA. It is not, as Defendant contends, private parties that are violating the ESA. It is FDEP. And issuance of these septic tank permits contributes to that violation. Defendant's argument fails to contend with federal preemption.

The Supreme Court has explained the way preemption operates as follows: "Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal law; and therefore the federal law takes precedence and the state law is preempted." *Murphy v. NCAA*, 584 U.S. 453, 477 (2018). Thus, FDEP "ha[d] the choice of either regulating in this area according to federal ESA standards or having its regulations preempted by the federal ESA provisions and regulations." *Strahan*, 127 F.3d at 170. It chose the latter. So, the injunction requires that FDEP cease its action that violates the ESA until it obtains an incidental take permit.

"That a State wishing to engage in certain activity must take administrative and sometimes legislative action to comply with federal standards regulating that activity is a commonplace that presents no constitutional defect." *South Carolina v. Baker*, 485 U.S. 505, 507 (1988). Thus, the injunction does not direct FDEP to regulate private parties to implement a federal scheme but directs it to comply with federal law. *See* U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . .").

### C. Proximate Causation

It was established by the evidence presented by Plaintiff at summary judgment that Defendant was the proximate cause of manatee takings. Defendant returns to beating the drum that FDEP only just began oversight of the OSTDS program. This argument fails for the reasons noted above and in the Court's previous orders. (*See generally* Doc. Nos. 134 & 172).

FDEP rests its proximate causation argument on pollution from OSTDS and the attenuation of that pollution from its origin to the North IRL. Defendant draws an analogy to the farmer in Justice O'Connor's *Sweet Home* concurrence who tills his field only for the runoff to ultimately injure an endangered species. *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 713 (1995) (O'Connor, J. concurring). Rightfully, proximate causation does not attach there.

This example also conveniently answers a question Defendant posed earlier in the Motion. That attenuation is why the private parties operating septic tanks are not before the Court as defendants. FDEP's role is not so attenuated. In addition to its obligations under the ESA, FDEP is a state entity with "the power and the duty to control and prohibit pollution of air and water." Fla. Stat. § 403.061. Defendant issued OSTDS permits and maintains the program that has caused increased pollutant levels and subsequent manatee takings. It is entirely foreseeable that Defendant's actions have and will violate the ESA. (*See also* Doc. 134 at 9–17; Doc. 172 at 12–20).

Finally, Defendant argues that it is likely to prevail on its appeal because the definition of "harm" under the ESA is due to change. While there are ongoing efforts to "rescind the regulatory definition of 'harm'" under the ESA, 90 Fed. Reg. 16102, 16102 (Apr. 17, 2025), Defendant asks the Court to speculate and assume those efforts will be fruitful. It declines to do so.

Moreover, "harm" is just part of the definition of "take." The proposed change says nothing of "harass[ment]," which Plaintiff has also shown. This new definition of "harm" Defendant advances is not the law nor is the proposed interpretation of the ESA. As Chief Justice Roberts reminded us in striking down the *Chevron* doctrine, the Supreme Court has "made clear, repeatedly, that '[t]he interpretation of the meaning of statutes, as applied to justiciable controversies,' was 'exclusively

a judicial function.'" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 387 (2024) (alteration in original) (quoting *United States v. Am. Trucking Ass'ns, Inc.*, 310 U.S. 534, 544 (1940)). The Court has applied the law, and FDEP is liable for violating the ESA.

Having failed to show a strong likelihood of success on the merits, the Court need not address the remaining factors. *Ohio v. EPA*, 603 U.S. 279, 292 (2024) ("Because each side has strong arguments about the harms they face and equities involved, [ ] resolution of these stay requests ultimately turns on the merits and the question who is likely to prevail at the end of this litigation.").

### IV. CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** that Defendant's Motion to Stay (Doc. 191) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on June 9, 2025.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record